J. B. CONLY v. E. G. COFFIN.

*Action to Rescind Contract—False Representations of Value—Evidence.*

1. A false representation as to the value of land, when it is not peculiarly within the knowledge of the vendor alone, and nothing is done to prevent investigation, and there is no relation of trust and confidence between the parties that may tend to prevent such investigation, will not entitle the purchaser to relief through a rescission of the contract.

2. While it is error to exclude evidence of facts material to the issues submitted in the trial of an action, yet such error is harmless when the excluded evidence could not, if admitted, change the result.

CONLY *v.* COFFIN.

CIVIL ACTION, brought against the defendant by plaintiff for the rescission of contract and cancellation of deeds for land, upon the ground of a false representation as to the value of land sold by defendant to plaintiff, tried before *Armfield, J.*, at Fall Term, 1893, of SWAIN Superior Court.

Upon an intimation by his Honor that, in no aspect of the case, could the plaintiff recover, he took a nonsuit and appealed. The facts necessary to an understanding of the opinion appear therein.

*Mr. W. W. Jones*, for plaintiff (appellant).
*Messrs. Fry & Newby*, for defendant.

BURWELL, J.: It is alleged in the complaint that J. B. Conly was induced by the false and fraudulent representations of the defendant to execute to him a deed for certain valuable property in this State, and to accept in exchange therefor from the defendant certain real estate in the State of Kansas. He brought this action to have the whole contract rescinded, and he having died, his heirs and personal representative prosecute this suit.

Since his Honor held that, in no aspect of the case, could the plaintiff recover, we must consider the evidence in the light most favorable to them. The false representations consisted in the allegation that the Kansas property was worth " not less than $12,000." The evidence tended to show that this statement was false—grossly so—and that the defendant made it to cheat and defraud the said Conly, who says in his complaint that he " relied entirely upon the representations of the defendant."

Let us assume, first, that he entered into this contract solely because of this alleged false and fraudulent representation of the defendant.

"A mere false assertion of value when no warranty is intended is no ground of relief to a purchaser, because the

assertion is a matter of opinion which does not imply knowledge, and in which men may differ." Kent's Com., Vol. 2, page 486. " The vendor of property may indeed know that the property is not worth what he says it is worth, but the very fact that the representation is made by the owner is enough to put any person of average intelligence on his guard." Story Eq., Vol. 1, page 207, note. " *Simplex commendatio non obligatio* is a maxim of sales, not only in the Roman law, but in the common law. * * * The reason why the law treats such statements as idle, so far as it does so treat them, is that they are only 'trade talk,' and ought not to be accepted as trustworthy. As owner, he will naturally set a high value upon his own, and, if he is about to sell it, everybody knows that the temptation to make the most out of it is characteristic of human nature. The law will not help the purchaser who accepts the exaggerated or false statements of value made by the vendor or his agent." Bigelow on Frauds, 491.

In *Saunders* v. *Hatterman*, 2 Ired., 32, it was decided that " where at the time of the sale of land a false and fraudulent affirmation of its value was made, yet an action on the case for deceit will not lie, as the vendee might by reasonable diligence have informed himself of its trule value." And in *Setzar* v. *Wilson*, 4 Ired , 501, RUFFIN, C. J., says: " The law does not give an action against the vendor for his false affirmation as to the value of the thing sold."

" A misrepresentation, to be material, should be in respect of an ascertainable fact as distinguished from a mere matter of opinion. A representation which merely amounts to a statement of opinion * * * goes for nothing, though it may not be true, for a man is not justified in placing reliance on it." Kerr on Fraud and Mistake, page 83. This author says that " a man who relies on such affirmation, made by a person whose interests might so readily prompt him to invest the property with exaggerated value, does so at his peril, and must take the consequences of his own imprudence."

There was no evidence tending to show that the value of this property was a matter peculiarly within the knowledge of the defendant ; that it was not known to other persons to whom the purchaser might have applied for information ; that the defendant did anything to prevent investigation on his part, or that there was any relation of trust and confidence between them that might have that effect.

Hence, the principles announced by the learned authors quoted above, and established by the former decisions of this Court, have application here, and the vendee having seen fit to purchase the property at the price set upon it by the vendor, and in entire reliance upon his statements as to its value, cannot get relief by the rescission of the bad bargain he so negligently made.

It appears from the evidence that J. B. Conly, of his own accord, or at the suggestion of the defendant, before the consummation of the trade, inquired by telegraph of the Mayor of the town in Kansas where the property was situated, concerning its value, and this inquiry (the Mayor being absent) came into the hands of one Baker who was the resident agent of the defendant and had charge of the property for him, and was answered by said agent in the name of the Mayor.

There was no evidence, as it seems to us, that this representation of the value of the property was within the scope of Baker's agency, or that it was made at the suggestion of the defendant, or with his knowledge or consent. There was no evidence that he knew of the existence of the telegram until informed of it by Conly after the whole trade was consummated.

It seems to us, moreover, that this telegram purporting to come from the Mayor, was of such a nature as should have put him on his guard. The defendant, he says, had represented to him that the Kansas property which he offered to exchange for his North Carolina property was worth twelve

thousand dollars. He made inquiry of a disinterested person, as he supposed, and was told in effect that the defendant had misrepresented the value of his property; that it was not worth twelve thousand dollars in the opinion of the sender of the telegram, but only eight or ten thousand dollars. If, after he received this information, he still chose to rely on what the defendant had told him, he ought not now to ask that a contract, so negligently entered into by him, should be rescinded, for it appears that he consummated the contract after he was informed that the defendant's statement as to the value of his property was false.

His Honor, therefore, did not err when he refused to submit the issues tendered by the plaintiff, and when he intimated that there was no evidence to support the affirmative of the issues that were submitted.

We think there was error in the exclusion of the evidence offered by the plaintiff to show that the defendant had told Conly that the property was worth twelve thousand dollars, and that the statement when made was known to be false, for those facts might have been material upon the issues submitted. But the error became harmless when, as appears here, the excluded evidence could not, if it had been admitted, have changed the result. There would still have been no sufficient evidence to go to the jury to establish the affirmative of the issues, the burden of which was upon the plaintiff.                              Affirmed.