J. B. MILLER AND GEORGE MARYLAND v. J. S. MATEER AND
A. L. PAYNE.

(Filed 9 November, 1916.)

**1. Deeds and Conveyances—Fraud—Evidence—Trials.**

Evidence in this case is held sufficient to set aside a deed for fraud in its procurement which tends to show that the defendant induced the plaintiff to exchange lots in the city wherein he resided and conducted a small business for timbered lands situated 13 miles therefrom in the country, with which and the value of such lands he was ignorant, by the defendant's misrepresentations as to its value, upon which he relied,

26—172

without looking at the land; that defendant was conversant with the values of timbered lands, and with that of the lands in question, and thereby procured the plaintiff's land at a grossly inadequate price.

## 2. Same—Misrepresentations.

Where there is evidence of false representations sufficient to set aside a deed for fraud in its procurement, among other things, that the defendant paid $19,000 for the land, it is competent to introduce in evidence the deed to the defendant, reciting a consideration of $3,000, and also the value of the adjoining lands, to contradict the defendant's representation thereof made to plaintiff, who was unfamiliar therewith, upon the question of fraud in inducing plaintiff to make the trade.

## 3. Same—Recited Consideration.

The consideration recited in a conveyance of land is not contractual or an estoppel between the parties, and may be shown in evidence when relevant to the inquiry as to whether the grantee in the deed made fraudulent representations thereof in inducing another to purchase the lands.

## 4. Deeds and Conveyances—Fraud—Misrepresentations—Caveat Emptor.

One who knowingly makes false and material representations in procuring a deed to lands, and relied upon by the other party, and which induced him to make the transaction, cannot escape responsibility upon the ground that the other party was negligent in relying upon them, if in making the representations he resorted to conduct which was reasonably calculated to induce the other party to forego making the inquiry.

## 5. Equity—Deeds and Conveyances—Fraud—Admissions—Credits—Procedure.

In an action by A. and B. to set aside a conveyance by A. to defendant for fraud, it appears that the consideration for the deed was an exchange of town lots for country lands, in which the jury found fraud, and by admission A. was the potential owner of B.'s lot, and this lot was a part of the consideration to A. in making the transaction, which, under the verdict of the jury, was set aside for fraud: *Held*, it was not necessary to the adjustment of the equities in the case by the court that fraud be found in the procurement of B.'s deed, which was not attacked on that ground; and the jury having found that B. was not entitled to recover, and the value of B.'s lot and the price plaintiff had paid thereon being admitted, a judgment for this difference in A.'s favor was proper, less certain credits due to defendant; which, upon proper notice in the Superior Court, will be made a charge upon the defendant's land; and there being no findings as to the amount of defendant's credits allowed in the judgment, leave is given him to give notice in the Superior Court to have the true account ascertained upon evidence.

CIVIL ACTION tried at May Term, 1916, of FORSYTH, before *Webb, J.,* upon these issues:

1. Did the defendants or either of them, by false and fraudulent representations, procure the plaintiff J. R. Miller to execute to them the deed to the two lots in the city of Winston-Salem, described in the

MILLER *v.* MATEER.

first paragraph of the complaint, as alleged in the complaint? Answer: "Yes."

2. Are the defendants in the wrongful possession of the lots described in the first paragraph of the complaint? Answer: "Yes."

3. What damage, if any, has the plaintiff J. R. Miller sustained by way of rents and profits? Answer: "$114."

4. At the time of the execution of the deed by George Maryland to the defendant was it understood and agreed by and between them that the defendants would pay to him the further sum of $1,828.50? Answer: "No."

5. What amount, if anything, are the defendants indebted to the plaintiff George Maryland? Answer: "Nothing."

From the judgment rendered, the defendants appealed.

*Holton & Holton, David H. Blair for plaintiffs.*
*Jones & Clement, W. T. Wilson, Louis M. Swink, Gilmer Korner for defendants.*

BROWN, J. Two separate actions were instituted against these defendants, one by plaintiff Miller and one by plaintiff Maryland. It was admitted that both actions arose out of the same transaction, and by consent they were consolidated and tried together.

The defendants tendered certain issues and excepted to the refusal of the court to submit them to the jury. We think the material facts controverted in the pleadings are clearly presented in the issues submitted, and that the defendants had opportunity to present any material and competent evidence. *Redmond v. Mullenax,* 113 N. C., 505.

It is not alleged in Miller's complaint or in Maryland's that the execution of the deed to the lot on Old Town road by the latter to the defendants for an expressed consideration of $2,500 was obtained by fraud. Maryland sues to recover the alleged balance of the purchase price claimed by him, and that issue was submitted and found against Maryland.

As he obtained no judgment, and did not appeal, he is eliminated from the case. At the conclusion of the evidence defendants moved to nonsuit. The motion was properly overruled. The action by plaintiff Miller is brought to set aside a deed conveying two lots in Winston-Salem. on Sixth Street and described in his complaint, alleging that the execution of the deed was obtained by the false and fraudulent representations of the defendants.

The evidence, taken in its most favorable light for plaintiff, tends to prove that he owned the said lots and was approached by defendant Mateer (the partner of defendant Payne) to exchange the lots for

timber land in Stokes County. Mateer told plaintiff that the land cost them $43 per acre, a total of $19,350, and he had been offered $50 per acre for it; that the land had over two million feet of merchantable pine timber on the 450 acres; that they had been offered $9,000 for the timber on the stump, but refused the offer, because it was not enough; that if he bought it, Mateer would put in a sawmill and cut the lumber, and Mateer assured Miller "the lumber there is worth more than the value of the land I priced it to you at," and that the adjoining lands were selling at $50 per acre. Mateer had been in the sawmill business all his life; Miller lived in Winston-Salem, about 30 miles from this land, was a barber, and ran a small livery business and worked in a tobacco factory, and knew nothing of timber or timber lands. He made practically no examination of the tract, but relied on the representations of Mateer, who stated that his partner, Payne, was worth $75,000 and that he was worth half that amount.

The evidence tends further to prove that defendants paid only $3,000 for the Stokes land; that the representation that adjoining land was worth $50 per acre was false; that there was not over 500,000 feet of timber in the land, instead of 2,000,000. According to the evidence of plaintiff, the net result of these transactions is that the defendants acquired the Sixth Street property of Miller, worth from $8,000 to $12,000, with encumbrances of $1,510.44, and George Maryland's property on Old Town Street, for which they agreed to pay $2,600 and which Mateer now says he values at $1,600 to $1,800, for $550 cash and a debt of $221.50 due the Building and Loan Association; and in addition to all of this, they have the notes of Miller for $6,934.18, secured by mortgage on the Stokes County land.

It is useless to discuss the evidence further than to say that, taken in its most favorable light for plaintiff, as must be done upon a motion to nonsuit, it abundantly justified the court in overruling the motion.

The jury seems to have given full faith and credit to plaintiff's evidence, which, if believed to be true, establishes a clear case of fraud upon the part of the defendant Mateer, whereby he obtained the execution of the deed from plaintiff Miller to himself and his partner, Payne.

We have considered the ten assignments of error directed to the evidence, and find them to be without merit. It was competent to introduce the deed of December, 1913, to defendants for the Stokes land, showing that the consideration was $3,000. The recital of the consideration for the purchase of land contained in a deed is not contractual or an estoppel as between the parties, but it is competent evidence as against all parties to the deed, for it is presumed that their deed recites the true consideration. The recital in this deed contradicts the defendant Mateer as to what price defendants paid for the land.

It was competent to admit evidence tending to prove the value of the adjoining lands for the purpose of contradicting Mateer, who, plaintiff testified, represented them to be worth $50 per acre. Such evidence tended to prove that Mateer made a false and fraudulent representation in respect to their value which was material in inducing plaintiffs to make the trade.

The following prayer for instruction was refused: "The doctrine of *caveat emptor* applies in the sale of real estate as well as in the sale of personalty; and if you find the representations were made as alleged in the complaint, but that the means of knowledge of the true facts were at hand, and equally available to both parties, and the subject-matter open to the inspection and subject to investigation of both parties alike, and there was no warranty of the facts as represented, the plaintiffs must show that they availed themselves of the information existing at the time of the trade before he will be heard to say that he has been deceived by the misrepresentations of the defendants."

There are cases in which the doctrine of *caveat emptor* has been applied in the sale of land, but we find no precedent for applying it in a case like this.

The plaintiff lived in Winston-Salem and is a colored barber and liveryman. He had no experience in the purchase of timber lands, and the defendants were experts in that business. The lands were situated at a considerable distance, in another county. The plaintiff had no available means of ascertaining the falsity of the representations, either as to purchase price, quantity of timber, or value of the adjoining lands. The plaintiff evidently relied upon the representations of defendants and listened with credulity to the glowing eloquence of Mateer. It is true, plaintiff was an easy victim, but he belongs to a class that unfortunately are sometimes the ready prey of sharpers of the superior race. Let it be said to the credit of the jurors of that superior race that they seldom if ever fail to right such wrongs when proven.

Upon this point the case of *Stewart v. Realty Co.* is very apposite; 159 N. C., 230. In that case it is held: "While in proper instances the doctrine of *caveat emptor* applies to transactions in land, relief will be afforded when it is shown by the buyer of real estate in a town where he was unacquainted with such values that he reasonably relied upon a false representation of an expert therein, in a sale made by him, that the owner had recently bought the property at $3,500, when in point of fact he had only paid $2,750 for it, and it is fairly to be inferred that the false representation was made with the intent to deceive the purchaser and induce him to believe he was making a good trade."

It is well settled that a person cannot escape responsibility for false representations on the ground that the other party was negligent ·in relying on them, if, in making the representations, he resorted to conduct which was reasonably calculated to induce the other party to forego making inquiry. 14 A. and E. Enc., 123; *May v. Loomis,* 140 N. C., 351; *Walsh v. Hall,* 66 N. C., 233; *Hill v. Brower,* 76 N. C., 124.

There are several assignments of error to the judgment as rendered by the Superior Court. The defendants except because the court "adjudged that the plaintiff recover of the defendants the sum of $1,828.50, balance due on the purchase money for said plaintiff's interest in the George Maryland lot, with interest thereon from 14 May, 1914; subject, however, to a credit of $270.44 as of this date, for taxes and interest advanced."

It is true that there has been no specific finding by the jury that the Maryland deed was obtained by the fraud of the defendants, but the plaintiff does not seek to recover that lot on the Old Town road, and there is no necessity for such finding. There is evidence tending to prove that the lot really belonged to Miller, subject to Maryland's interest of $550 and the building and loan mortgage of $221.50; that the lot was taken by defendants as part payment for the Stokes land at a valuation of $2,600; that, deducting those amounts, plaintiff's interest amounted to $1,828.50.

The jury found the issue against Maryland, and that he is not entitled to the $1,828.50. The testimony of defendants tends to prove that the lot is worth $1,600 to $1,800, while plaintiff values it higher. The defendant objects to the judgment because no finding has been made establishing the fact that the Old Town or Maryland lot was taken by defendants in part payment of the Stokes land at a valuation of $2,600. As this is admitted by the evidence of the defendants themselves, in adjusting the equities of the case the judge had a right to assume it to be a fact. Mateer testified to it, and so did Payne. The latter gives all the figures specifically, as follows: "I brought the money, $550, down to pay Maryland, and left it with Mr. Johnson. The final settlement was made in Johnson's office, final closing up of the trade and final settlement and everything paid and final balance sheet made up by Mr. Johnson of the whole transaction. We took their Sixth Street property at $13,000 and the Old Town road property at $2,600; that made a total of $15,600. We took two deeds of trust, aggregating $6,934.18, which made a total of $22,534.18. The Stokes County land was $20,250, and cash paid Maryland $550. The $550 went to Maryland in full of his interest in the transfer—transfer of his Old Town road property to us. We paid off judgment for $96.44

against J. R. Miller and assumed $221.50 on the Maryland property, and deed of trust on Sixth Street property of $1,414, and some record expense, $2.24; that totals $22,534.18 and balances the transaction. This statement I have given out, according to my understanding with Miller, was the final settlement of this whole transaction, and figures I have given were final, complete, and satisfactory settlement of the whole transaction as affecting George Maryland's property and J. R. Miller's—both of them."

The plaintiff offered in open court to pay to defendants the money they have paid out on the Old Town lot and take it back, but defendants refused. Without the finding of an issue of fraud in obtaining that deed, the court cannot compel defendants to make the conveyance, but it can charge them with the $1,828.50 that went to pay for the Stokes land. It would be against good conscience, in view of the admissions of defendants in their evidence, to permit them to retain the property and pay only $771.50 for it. The court very properly rendered judgment against them for the difference between that sum and the agreed price, $2,600, less a certain credit. The court should have charged the sum upon the Stokes land. That can be done now by motion in the Superior Court, upon notice.

The defendants further assign error that "the court, arbitrarily and without any evidence whatsoever, fixed a credit for interest and taxes at $270.91 upon the said judgment of $1,828.50 in favor of the defendants, and the defendants contended then, and contend now, that the interest, taxes, and other amounts expended by them upon the Sixth Street and Old Town road lots were largely in excess of the sum of $270.91 fixed by the court."

The court does not seem to have made a specific finding of the facts as to this credit claimed by defendants upon the $1,828.50, and we are unable to find in the record any admissions of defendants fixing the credit for taxes and interest paid out on the Sixth Street and Old Town lots at the exact sum of $270.91, the credit allowed in the judgment. If defendants contend there is error in the sum, and that it amounts to more than $270.91, they have leave to give notice and apply to the Superior Court to take evidence as to the credit claimed by them for taxes and interest on said lots, and have the true sum ascertained and the said judgment for $1,828.50 credited therewith.

The judgment of the Superior Court is

Affirmed.