G. H. HARDING AND THE EDENTON HOTEL COMPANY v. SOUTHERN LOAN & INSURANCE COMPANY, L. A. PERRY, MRS. JULIA E. WOOD, W. P. WOOD, NELLIE W. MOORE, MARY WOOD COOKE, JULIA WOOD SKINNER, JOHN E. WOOD, HELEN W. BEAL, OLIVE WOOD WARD, STEWART WOOD, C. M. WEST AND SOUTHERN LOAN & INSURANCE COMPANY, TRUSTEE.

(Filed 18 September, 1940.)

**1. Fraud § 5—Elements of actionable fraud.**

The essential elements of actionable fraud are a definite and specific representation, which is materially false, made with knowledge of its falsity or in culpable ignorance of its truth, with fraudulent intent, which is reasonably relied on by the other party to his deception and damage.

5—218

**2. Same: Vendor and Purchaser § 25—**

The purchaser of real estate cannot maintain an action for fraud for misrepresentations concerning the value of the property or its condition and adaptability to particular uses when the purchaser has an opportunity to make full investigation and is not induced to forego investigation by artifice or fraud on the part of the seller.

**3. Fraud § 9—**

Where the purchaser of real estate relies upon misrepresentations as to the value of the property or its condition and adaptability to particular uses, he must plead want of opportunity to make investigation or artifice on the part of the seller inducing him not to do so.

**4. Same—Evidence held to show that purchaser of real estate had full opportunity to investigate condition of property, and nonsuit should have been entered in absence of evidence of artifice inducing him not to do so.**

Plaintiff, who had purchased certain hotel property from defendants, instituted this action to recover for alleged misrepresentations in regard to the water, heating and plumbing systems in the said building, the condition of its roof, etc., which plaintiff alleged could not be discovered upon an inspection of the property but only in the operation of the hotel. Plaintiff's evidence disclosed that plaintiff knew that defendants' agent, whom he alleged had made the misrepresentations, had no knowledge of the condition of the building other than that given him by others, that plaintiff made an inspection of the property and had full opportunity to talk with the defendants' hotel lessee and his clerk and had full opportunity to make any inquiry of them as to the water, heating and plumbing systems, the roof and other conditions of the hotel which could not be readily ascertained by observation, but failed to do so, and there was no evidence that defendants' agent did anything to prevent or induce him not to make full investigation. *Held:* The representations amounted to nothing more than the expression of opinion, and are insufficient to support an action in deceit, and defendants' motion for judgment as of nonsuit at the close of all of the evidence should have been granted.

**5. Fraud § 4: Vendor and Purchaser § 25—**

Where the evidence discloses that the agent of vendors had no actual knowledge of the condition of the building, but was relying, to the knowledge of the purchaser, upon information furnished him by a third person, without evidence that the agent had reason to doubt the reliability of his informant or that his statement was made without a *bona fide* examination of the building, is insufficient to show that representations as to the condition of the building were made with knowledge of their falsity or in culpable ignorance of their truth.

**6. Election of Remedies § 3—**

An exception to the refusal of the court to require plaintiff to elect between an action in contract for breach of warranty and in tort for deceit cannot be sustained when it appears that the action was tried solely upon the theory of fraud or deceit.

**7. Election of Remedies § 7—**

> Judgment in an action tried solely upon the theory of fraud or deceit will not bar plaintiff from thereafter pursuing his alternate remedy *ex contractu*, if any he has, for breach of warranty.

APPEAL by plaintiff and by defendants from *Johnston, Special Judge,* at April-May Special Term, 1940, of CHOWAN. Reversed.

Civil action to recover damages for fraud and to restrain foreclosure of a deed of trust.

The defendants, being the owners of the capital stock and of the mortgage bonds of the Edenton Hotel Company, a corporation, listed the same with one Lucas, a real estate broker of Washington, D. C., who apparently specialized in hotel property. Lucas made contact with the individual plaintiff who is engaged in the hotel business. As a result, Harding entered into negotiations with the defendant Gaither, president of the corporate defendant and alleged representative of the other stockholders, for the acquisition of the hotel property through the purchase of the outstanding stock.

After making inquiry as to the property and after an inspection thereof in company with Gaither, Harding declined to accept the proposition made by Gaither, but made a counter proposition to purchase upon terms subsequently reduced to writing. Gaither informed plaintiff that he was not authorized to accept the counter proposition but that it would have to be submitted to the other defendants. Upon submission thereof to the stockholders the proposition of plaintiff was accepted and the agreement in respect thereto was reduced to writing.

Plaintiff alleges that the defendants through Gaither, their agent, "warranted and represented to the plaintiff Harding that, with certain minor exceptions not herein referred to or complained of, the said hotel building, including its water, heating and plumbing system, were in excellent condition and adequate and sufficient for the purposes for which the same were designed and intended." In an amended complaint he alleges that Gaither further warranted and represented to the plaintiff "that the tenant then leasing the hotel property from the defendants was promptly paying $500 per month as rent." In connection therewith plaintiff makes the necessary allegations of falsity, materiality, intent and reliance thereon.

In their answer defendants deny the allegations of fraud and by way of counterclaim allege default in the payment of installments due and accrued interest, pray judgment for the amount of the defaulted principal and interest and for the foreclosure of the mortgage securing the indebtedness assumed by plaintiff.

Issues were submitted to and answered by the jury as follows:

"1. Did the defendants through their agent represent and warrant the condition of the hotel, as alleged in the complaint? Answer: 'Yes.'

"2. Did the defendants through their agent make the representations as alleged in the complaint in order to induce plaintiff Harding to enter into the contract of sale, as alleged in the complaint? Answer: 'Yes.'

"3. If so, were said warranties or representations untrue? Answer: 'Yes.'

"4. If untrue, did the defendants' agent know them to be untrue or was he consciously and culpably ignorant as to whether they were true or not? Answer: 'Yes.'

"5. Were said representations material and did the plaintiff Harding reasonably rely on said representations in entering into the contract and was he thereby induced to enter into said contract? Answer: 'Yes.'

"6. What damages, if any, is plaintiff Harding entitled to recover? Answer: '$9,900.00.' "

The defendants excepted to judgment thereon and appealed. The plaintiff excepted to so much of the judgment as directed that the recovery by plaintiff be applied to the installments of principal and interest due on the purchase price and appealed.

*Herbert Leary and W. D. Pruden for plaintiff, appellant.*
*R. C. Dozier and McMullan & McMullan for defendants, appellants.*

BARNHILL, J. The corporate plaintiff seeks and was awarded no relief. It is a necessary party only by reason of the prayer for relief by defendants who seek a foreclosure of the mortgage upon the real property belonging to the corporation. The appeal of the individual plaintiff must turn necessarily upon the disposition made of defendants' appeal. Therefore, the question he seeks to present for decision requires no discussion.

On 8 October, 1938, plaintiff, an experienced hotel man, went to Edenton and inspected the real property known as the Joseph Hewes Hotel owned by the corporation, the capital stock of which he later purchased from the defendants. On 19 October he wrote Lucas "was in Edenton yesterday looked over the property with Mr. Gaither. It is in terrible shape and Mr. Gaither was not a little surprised as he had not made a thorough inspection for some time. However, it has possibilities and I made them an offer."

In respect to the transaction made plaintiff testified: "I made an inspection of the hotel before I bought it. That was in the early part of October. I bought it October 25th, and the inspection was made by me about two weeks prior to that time. Mr. Horton (the lessee), and Mr. Gaither were with me." Being asked "what, if anything, did Mr.

Gaither say to you with reference to the hotel and its heating and water and roof, etc.," he replied: "I had been told all these conditions about the heating plant, hot water and roof especially. I saw this letter written by the contractor, and, of course, I went down to the engine room. I didn't take, a bath, I did go up on the roof, a pretty sunshiny day, just as today and I asked Mr. Gaither about the roof. He said they had had it repainted and had had it fixed. I asked him about the hot water, and he said they had put in a water softener and it was in perfect condition. And about the heating. I had heard that the west wing of the hotel could not be heated properly. He said that had been remedied and they could get heat in the west wing of the hotel. That was a couple of weeks before I bought it." He testified further: "Both Mr. Gaither and myself knew on the day I came down to inspect the hotel that it was in terrible shape. . . . I first took up the proposition of purchasing this hotel with Mr. Lucas. I saw a copy of Mr. Perry's letter in Mr. Lucas' office and later saw the original in Mr. Gaither's office. I came down to Edenton for the purpose of inspecting the hotel. Mr. Gaither came with me. From my general conversation I assumed that Mr. Gaither was not an experienced hotel man and that all his life he had been engaged in other undertakings, the banking business. The only way to discover the defects of which I have complained was in the course of operation and I knew Mr. Gaither had never operated a hotel. I knew he had complaints from the operators. I knew that the only knowledge he could possibly have about the condition of the hotel came from what somebody else had told him. I came down here two weeks before the contract was signed. I went into the hotel, on every floor of it. I went up on the roof. I went down to where the heating plant was. I made an examination of everything to be seen.

"We arrived just before lunch and spent three or four hours there. Mr. Horton (the lessee) was there at the time and Mr. Kavanaugh (the hotel clerk) also. I had an opportunity to talk with Mr. Horton or Mr. Kavanaugh if I chose. Mr. Gaither did nothing to prevent me talking with these men. I directed all my questions to Mr. Gaither."

In addition to the foregoing testimony of the plaintiff Harding, he offered in evidence a letter from L. B. Perry, a contractor, addressed to the defendant Gaither, dated 21 September, 1938, as follows:

"As per your request I went to Edenton today and examined the Joseph Hewes Hotel. I found the hotel in excellent condition, with the exception of some minor repairs, which can be made at a very low cost.

"First, the foundation is in perfect shape, all walls are perfect, not a crack in any of the brick work. Plastering needs a little repair. This can be done at a cost not to exceed $100.00.

"The doors have been somewhat neglected and some of them need adjusting. This would only require the work of a good carpenter for a few days.

"The windows are a little loose, this can be remedied by moving the stops in a little. This had not had any attention since the hotel was built.

"I found the plastering on the outside wall on top of the fourth floor slightly damaged due to water seeping through the brick work from parapet walls. This trouble with the parapet walls has recently been attended to by an application of asphalt, which should prevent further seepage. I found an excellent job was done. The damage to the plaster is only slight and this work is included in my estimate of $100.00 for putting all of the plastering in good condition.

"In my opinion, some painting is needed in the banquet room, lobby and halls. If this were done, I believe it would greatly improve the property. The roof seems to me to be in splendid condition.

Respectfully,

L. B. PERRY."

Plaintiff likewise offered evidence tending to show the falsity of the statements made in respect to the water, heating and plumbing systems and the roofing and testified as to other defects in the building and as to his reliance upon the representations made.

This is the substance of the evidence as to the false representations relied upon by plaintiff. Is it sufficient to sustain a recovery in an action cast in tort upon allegations of fraud and deceit? We must answer in the negative.

The essential elements of actionable fraud or deceit are the representation, its falsity, scienter, deception and injury. The representation must be definite and specific; it must be materially false; it must be made with knowledge of its falsity or in culpable ignorance of its truth; it must be made with fraudulent intent; it must be reasonably relied on by the other party; and he must be deceived and caused to suffer loss. Our decisions are uniformly to this effect. *Electric Co. v. Morrison,* 194 N. C., 316, 139 S. E., 455; *Peyton v. Griffin,* 195 N. C., 685, 143 S. E., 525.

Representations concerning the value of real property or its condition and the adaptation to particular uses will not support an action in deceit unless the purchaser has been fraudulently induced to forbear inquiries which he would otherwise have made, and if fraud of this latter description is relied on as an additional ground of action, it must be specifically set forth in the declaration. *Parker v. Moulton,* 14 Mass., 99; 19 Am. Rep., 315.

"It is generally held that one has no right to rely on representations as to the condition, quality or character of property, or its adaptability to certain uses, where the parties stand on an equal footing and have equal means of knowing the truth. The contrary is true, however, where the parties have not equal knowledge and he to whom the representation is made has no opportunity to examine the property or by fraud is prevented from making an examination." 12 R. C. L., 384. When the parties deal at arms length and the purchaser has full opportunity to make inquiry but neglects to do so and the seller resorted to no artifice which was reasonably calculated to induce the purchaser to forego investigation action in deceit will not lie. *Cash Register Co. v. Townsend,* 137 N. C., 652; *May v. Loomis,* 140 N. C., 350; *Frey v. Lumber Co.,* 144 N. C., 759; *Tarault v. Seip,* 158 N. C., 369; 23 A. J., 981.

The plaintiff admits that he knew that Gaither was not speaking of his own knowledge when he made the alleged representations and that he was not qualified to know but had to rely upon information from others. He, the plaintiff, made an investigation of the property and had full opportunity to talk with the hotel lessee and his clerk and to ascertain such additional information as he might require or desire concerning the water, heating and plumbing systems, the roof and the other conditions of the hotel which could not be readily ascertained by observation. Gaither did nothing to prevent him from so doing. While there is a suggestion in the record that Horton might not have disclosed the information had the plaintiff requested it, there is nothing to substantiate the suggestion. If the plaintiff had inquired of Horton and he had refused to answer or had given false information the plaintiff would have a more substantial cause for complaint.

As the plaintiff knew Gaither was not an experienced hotel man and that he had no personal knowledge as to the condition of the hotel but was relying upon statements made to him by a contractor and others, the representations as to the condition of the equipment of the hotel amounts to nothing more than the expression of an opinion and will not support an action in deceit. *Williamson v. Holt,* 147 N. C., 520; *Cash Register Co. v. Townsend, supra;* 12 R. C. L., 379, sec. 131; 23 Am. Jur., 975, sec. 165; *Conly v. Coffin,* 115 N. C., 563.

There is no sufficient evidence that the representation, if made, was made with knowledge of its falsity or in culpable ignorance of its truth. Plaintiff knew that Gaither was speaking "second-hand" and was relying on information received from others. There is no evidence that the contractor was not reliable or that he, to the knowledge of Gaither, made the statements contained in his letter without a *bona fide* and adequate examination of the building. And the plaintiff himself, after operating

the hotel through the winter of 1938-39, on 15 March, 1939, wrote Lucas "the building is in fine shape now and no great outlay of cash will have to be spent on it in some time." The statement of expenditures by him in repairing the building up to the date of this letter was not in excess of the $5,000.00 which he in his contract agreed to expend.

We have examined the record in respect to plaintiff's allegations and contentions in connection with the alleged representations as to the rental of the property. We find nothing in connection therewith sufficient to vary our conclusion.

The apprehension of the defendants that plaintiff's action is cast both in contract for breach of warranty and in tort for deceit is not well founded. The complaint might be so interpreted and the court did not rule on the motion of the defendants to require the plaintiff to elect. But it is clear that the court conceived that the action was in tort and the case was tried on that theory. In the beginning of its charge it stated to the jury: "The suit is brought in deceit—because of the conduct of the defendants or their agents, as alleged by the plaintiff, which amounts in law to fraud." In its charge on the issue of damages the court gave the measure of damages applicable in a tort action, specifically using the terms "tort-feasor" and "wrongdoer," and from a careful examination of the evidence and the charge it is made to appear that the words "warrant" and "warranties" as used in the issues were used as terms synonymous with the words "representation" and "representations." If the plaintiff has any cause of action for breach of warranty (about which we express no opinion) this action does not constitute res judicata in respect thereto.

We are of the opinion that the motion of the defendant for judgment of nonsuit duly renewed at the conclusion of all the evidence should have been allowed. Judgment will be entered accordingly.

On defendant's appeal—Reversed.

Plaintiff's appeal—Dismissed.