PAUL E. BOLICK, AND MARY J. BOLICK, PLAINTIFFS v. TOWNSEND COMPANY, A SUBSIDIARY OF MERRILL LYNCH REALTY ASSOCIATES, INC., JAMES L. BUNN, AND GAILE T. BUNN, DEFENDANTS

No. 8826SC932

(Filed 18 July 1989)

**Fraud § 12; Vendor and Purchaser § 6 — representation that land was suitable for residential purposes — sufficiency of evidence of fraud**

> In an action to recover for breach of contract and fraud in a sale of land, the trial court erred in entering summary judgment for defendant realtor where plaintiffs purchased from the sellers a parcel of land for residential use upon the representation of defendant realtor that the parcel had been approved for the installation of a septic system and could therefore be used for residential purposes; there was evidence through testimony of an employee of the county health department that the representation was false and that defendant knew it to be false or made the statement without regard to its truth or falsity; defendant intended for plaintiffs to rely on that representation because it was the contingency upon which their conditional contract with the sellers was based; plaintiffs in fact relied upon the representation and purchased the parcel which they could not use for its intended purpose; and defendant made a specific and definite representation reasonably calculated to induce plaintiffs to forego an independent investigation.

APPEAL by plaintiffs from *Snepp, Frank W., Judge.* Order entered 22 April 1988 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 21 March 1989.

Plaintiffs appeal from an order dismissing their cause of action against defendant Townsend Company for breach of contract, fraud and unfair and deceptive trade practices, upon defendant Townsend Company's motion for summary judgment. In their complaint, plaintiffs alleged that defendants Bunn had sold them a parcel of land and that defendant Townsend Company represented to them that it was suitable for a residence to be built upon it. When plaintiffs attempted to later convey the parcel to a third party, they discovered that the lot was unsuitable for residential use and the third party

BOLICK v. TOWNSEND CO.

[94 N.C. App. 650 (1989)]

refused to purchase the parcel. Plaintiffs then sued defendants for damages.

*Charles G. Monnett, III for plaintiff-appellants.*

*Hamel, Helms, Cannon & Hamel, P.A., and DeArmon & Burris, by Christian R. Troy and Elizabeth T. Hodges, for defendant-appellees.*

JOHNSON, Judge.

On or about 20 November 1983, plaintiffs and defendants James L. and Gaile T. Bunn entered into a written contract for the purchase of a parcel of land designated as Lot #7, Ludell Lane, Charlotte, North Carolina. Defendant Townsend Company was employed by the Bunns as the real estate company to sell their property. The plaintiffs intended to purchase the property for residential use.

On 21 November 1983, one day after the contract was signed, plaintiffs received a letter from the Townsend Company stating that a home could be built upon the lot in question because the property was suitable for the installation of a modified septic system. The letter was delivered by Hubert Holmes, the Bunns' listing agent who was employed by defendant Townsend Company. The letter also stated that the Environmental Health Department had confirmed the recommendation.

In April 1986 plaintiffs agreed to sell this same lot to a Raymond Woods. Mr. Woods, who also intended to use the lot for residential purposes, attempted to obtain approval for the installation of a septic system on the lot from the Mecklenburg County Environmental Health Department. The Environmental Health Department declined two applications submitted for approval, and Mr. Woods then refused to purchase the lot.

Plaintiffs then instituted this action against the Townsend Company and the Bunns on 19 March 1987, and the trial court dismissed it on 22 April 1988 pursuant to defendant Townsend Company's motion for summary judgment. Defendants James L. and Gaile T. Bunn filed no motion for summary judgment and the dismissal had no effect on the action which had been instituted against them.

On appeal plaintiffs bring forth one question for review. They contend that the trial court erred by concluding that the record failed to disclose a genuine issue of material fact and by consequent-

BOLICK v. TOWNSEND CO.

[94 N.C. App. 650 (1989)]

ly granting defendant Townsend Company's motion for summary judgment. We agree.

A motion for summary judgment tests the legal sufficiency of a claim for submission to a jury. If the pleadings, depositions, interrogatories, and admissions on file, along with any affidavits, demonstrate that there is no genuine issue of any material fact and only questions of law exist, then summary judgment is proper. *Rose v. Guilford County,* 60 N.C. App. 170, 298 S.E. 2d 200 (1982). Summary judgment is generally inappropriate in an action alleging fraud, *Bank v. Belk,* 41 N.C. App. 328, 255 S.E. 2d 430, *disc. rev. denied,* 298 N.C. 293, 259 S.E. 2d 299 (1979), as the existence of fraud must include fraudulent intent which is usually proven by circumstantial evidence.

In order to establish a prima facie case of fraud plaintiff must show

> (a) that defendant made a representation relating to some material past or existing fact; (b) that the representation was false; (c) that when he made it defendant knew it was false *or made it recklessly without any knowledge of its truth and as a positive assertion;* (d) that the defendant made the false representation with the intention that it should be acted on by the plaintiff; (e) that the plaintiff reasonably relied upon the representation and acted upon it; and (f) that the plaintiff suffered injury.

*Myers and Chapman, Inc. v. Thomas G. Evans, Inc.,* 323 N.C. 559, 374 S.E. 2d 385 (1988), *quoting Odom v. Little Rock and I-85 Corp.,* 299 N.C. 86, 261 S.E. 2d 99 (1980). (Emphasis in original.) We believe that plaintiffs have presented sufficient evidence in the case *sub judice* to withstand defendant's motion for summary judgment.

The uncontroverted evidence we have before us indicates that plaintiffs and defendants Bunn entered into a written conditional agreement on 20 November 1983 for the purchase of a parcel of land. The agreement was contingent upon a positive perk test being issued by the Mecklenburg County Health Department. A positive test would permit the installation of a modified septic tank system. On 21 November 1983, one day after the conditional agreement was entered, defendant Townsend, by its agent Hubert Holmes, submitted a letter to plaintiffs which stated that "a home can be built on Lot 7, Ludell Lane, Charlotte, N.C. using an en-

**BOLICK v. TOWNSEND CO.**

[94 N.C. App. 650 (1989)]

larged system with a diversion value and a separate wash line. This is further confirmed by a conversation with the Environmental Health Department (Mr. Hardister) dated 11-21-83." Plaintiffs then purchased the lot on 14 December 1983 pursuant to the representation made by defendant Townsend, through its agent, and later discovered that the property was unsuitable for residential use.

In opposition to defendants' motion for summary judgment, plaintiffs submitted the deposition of Mr. Bill Hardister, the Mecklenburg County Environmental Health Department employee with whom Mr. Holmes had allegedly spoken. Mr. Hardister testified in his deposition as follows:

Q. Do you recall whether or not you spoke to a Hubert Holmes of Merrill Lynch Realty back in November of 1983?

A. The name is familiar and I may have talked with him.

Q. Does your department give permits for septic systems over the phone?

A. No, we do not.

Q. Do you give opinions on septic systems over the phone?

A. No, we do not. We — we will give information such as options which may be suitable. We would not indicate to anyone that a particular system would be acceptable over the phone.

Q. What is your department procedure in regards to telephone approvals or opinions?

A. Basically, as far as alternate systems, they would be only — only the section supervisor would do that and as — my practice was to indicate to people that our only approval is issuance of an improvement permit. Without an improvement permit we have not said that a system is acceptable for a particular lot.

. . .

Q. I'll show that we've marked as Plaintiffs' Exhibit 1, which is a letter — well, I'd ask you if you can — if you know what it is or if you can identify it.

(WHEREUPON, Mr. Monnett handed the referenced document to the witness for his review.)

A. Well, it's a letter stating that a septic tank system can be installed or a home can be built on Lot 7 on Ludell Lane.

Q. What is an enlarged system?

A. I would think that that would be — well, what they're talking about, an enlarged system with a diversion valve, would be a system which would be probably one and one-half times the size of a regular system with a diversion valve that would allow the effluent to be diverted from one part of the system to another.

Q. What is a separate wash line?

A. It would be an additional nitrification line that would serve the washing machine only.

Q. Do you recall speaking with anyone concerning this lot on 11/21/83?

A. Not on this particular lot. I've talked to a lot of people about a lot of different lots; I can't recall specific lots necessarily.

Q. You don't recall any conversations with Mr. Holmes?

A. No; I said the name is familiar and I may well have talked with him, but I don't recall any specifics.

(WHEREUPON, the witness continued reviewing the referenced document.)

A. Reading further, this says that this was — that he did talk with me and I would not have told someone that yes, a lot is suitable. We would have issued an improvement permit had that been the case.

Q. Now, when you say that you would not have, how do you know that you wouldn't have?

A. *Well, it was always my policy in on-premises waste, as well as the department's, that we do not give verbal confirmations; we either issue a permit or we do not.*

Q. Do you ever have requests for verbal confirmations?

A. We have people who come in who want to talk about a particular lot who say, "Well, can I do this?" or "Can I do that?" We would request that they submit a plan and we would review that plan.

Q. Do you recall whether any plan was submitted to the department in 1983?

A. No[,] we don't have a record of one.

(Emphasis added.)

We are convinced that this deposition evidence raises a genuine issue of material fact as to defendant's intent in representing to plaintiffs that the parcel had been approved for residential use. Defendant does not deny that he represented to plaintiffs that the parcel had been approved for residential use. Defendant's representation that the parcel had been approved for the installation of a septic system was material because it was the contingency upon which the conditional contract was based.

There is evidence from which a jury could conclude that the representation was in fact false. The deposition evidence introduced by plaintiffs that the Health Department does not have a practice of issuing telephone approvals; that it does not give opinions concerning such matters over the phone; that without an improvement permit a system is not deemed acceptable; and that no plan was submitted to the department in 1983 on the lot in question, leads us to conclude that a jury could determine that defendant either knew of the falsity of the statement or recklessly made the statement without knowledge of its truth or falsity. Because defendant knew that this representation would remove the contract's contingency, we believe that a jury could also determine that defendant intended for plaintiff to rely upon the representation and to act upon it and purchase the property. Plaintiffs in fact relied upon the representation and purchased the parcel which they could not use for its intended purpose, a purpose of which defendant was well aware. Prior to the representation, plaintiffs' obligation to purchase the property was only conditional.

We believe that plaintiffs have established an actionable case of fraud against defendant Townsend Company and have raised genuine issues of material fact. Therefore, the trial court erred by granting defendant Townsend Company's motion for summary judgment.

In response to defendant's argument that even assuming that his statement was false, plaintiffs had the duty to make an independent inquiry as to the condition and character of the lot, we answer that our cases do not place such a duty upon plaintiff

BOLICK v. TOWNSEND CO.

[94 N.C. App. 650 (1989)]

in this instance. Defendant relies upon *Harding v. Southern Loan & Insurance Co.*, 218 N.C. 129, 10 S.E. 2d 599 (1940), and contends that plaintiffs had a full opportunity to investigate the property's value and its condition or adaptability to a particular use, and that therefore their claim for fraud must fail. The subsequent portion of the *Harding* rule, however, allows a plaintiff purchaser to maintain an action where the seller, through fraud, engages in an artifice "reasonably calculated to induce the purchaser to forego investigation," *id.* at 135, 10 S.E. 2d at 602, or to "forebear inquiries which he would otherwise have made." *Id.* at 134, 10 S.E. 2d at 602; *Olivetti Corp. v. Ames Business Systems, Inc.*, 319 N.C. 534, 356 S.E. 2d 578, *disc. rev. denied*, 320 N.C. 639, 360 S.E. 2d 92 (1987).

We have before us such a situation. In the case *sub judice* defendant made a specific and definite representation, rather than some general or vague statement about the property's condition. *See Ragsdale v. Kennedy*, 286 N.C. 130, 209 S.E. 2d 494 (1974); and *New Bern v. White*, 251 N.C. 65, 110 S.E. 2d 446 (1959). The inducement employed to prevent plaintiffs' inquiry was a representation that an employee of the County's Environmental Health Department had specifically approved the installation of a septic tank system upon the property. Defendant gave the employee's name as well as the date the contact was made. The named individual was in fact an employee of the Environmental Health Department. We believe that this is the type of artifice contemplated in *Harding, supra,* which is employed to induce a prospective purchaser to forego inquiry about real property. *See also Miller v. Mateer*, 172 N.C. 401, 90 S.E. 435 (1916) and *May v. Loomis*, 140 N.C. 350, 52 S.E. 728 (1905) where our Supreme Court found that the buyers had been induced through fraud to forego inquiry. (Although we have relied upon *Mateer, supra,* we specifically disavow its outmoded reasoning.)

It is for the aforementioned reasons that we hold that the trial court erroneously granted defendant Townsend Company's motion for summary judgment. We therefore reverse the trial court's order and remand the case for trial.

Reversed and remanded.

Judges BECTON and ORR concur.