JEANNE S. HARBACH AND HUSBAND, DR. FRANCIS HARBACH v. LAIN AND KEONIG, INC., JOHN KOENIG, CLARENCE HEMMINGER, VIP REAL ESTATE, INC., MONIKA PERRY, AND ROXANNE CHAMNESS

No. 834SC1194

(Filed 5 March 1985)

1. Appeal and Error § 59— denial of summary judgment motion—failure of record to show evidence

An assignment of error to the denial of a motion for summary judgment is overruled where the record does not show what evidence, if any, was presented to the court in support of the motion.

2. Fraud §§ 5.1, 12— fraud in sale of house—sufficiency of evidence

Plaintiffs' evidence was sufficient for the jury in an action against defendant real estate agents for fraud in the sale of a house to plaintiffs by falsely representing that the house had a sprinkler system in every room. The evidence did not establish that it was unreasonable for plaintiffs to rely on such representations where it tended to show that plaintiffs were told by the seller that button-like objects in the ceilings were part of the sprinkler system when in fact they were part of a smoke alarm system.

APPEAL by defendants Lain and Koenig, Inc. and Clarence Hemminger from *Tillery, Judge.* Judgment entered 1 July 1983 in Superior Court, SAMPSON County. Heard in the Court of Appeals 30 August 1984.

Plaintiffs, wife and husband, sued the several defendants for fraudulently inducing them to buy a house that allegedly was not as they represented it to be. At trial, following a verdict by the jury, plaintiffs obtained judgment against defendants Lain and Koenig, Inc., a Fayetteville real estate agency, and Clarence Hemminger, who was admittedly their agent and employee, for compensatory damages in the amount of $30,000 and punitive damages in the amount of $25,000. The jury found that Hemminger misrepresented the property to plaintiffs and that the latter were deceived to their detriment thereby. But plaintiffs' claims against defendant Monika Perry, also a Fayetteville real estate agent, and defendant VIP Real Estate, Inc., the concern that she was employed by, were dismissed, the former by a directed verdict at the end of plaintiffs' evidence, the latter by judgment on the pleadings; and plaintiffs' claim against defendant John Koenig, the president and controlling stockholder of Lain and Koenig, Inc., was disallowed by the jury. Before trial, judgment by default was entered against defendant Roxanne Chamness, the owner and seller of the property that plaintiffs purchased. The only judgment contested by this appeal, however, is the one against the appellants Lain and Koenig, Inc. and their agent Clarence Hemminger. At trial only the plaintiffs presented evidence, though defendants Monika Perry and John Koenig both testified as adverse witnesses pursuant to their call, and plaintiffs' evidence, when viewed favorably, tends to show the following:

During the fall of 1979, plaintiffs, then respectively 61 and 76 years old, were interested in buying a home in the country near Fayetteville, and they engaged Fayetteville real estate agent Monika Perry, who operated VIP Real Estate, Inc., to help them. After Ms. Perry had shown several places to plaintiffs without arousing their interest, she saw an advertisement or entry about a place that she thought might appeal to them. The entry was in the Fayetteville area Multiple Listing book, which contained similar entries for virtually all the properties that the real estate agents of that area then had listing agreements for, and it concerned a house and 4.77 acres of land owned by the defendant

Roxanne Chamness that the appellants, as listing agents, were trying to sell and had been for several weeks. The entry was made up, placed, and paid for by the appellants, and according to it the property was for sale at a price of $89,000. The entry gave the lot size and described the house as being a brick veneered residential structure approximately five and a half years old, with 3,000 square feet of floor space, central air conditioning and gas heat, carpet and hardwood floors, screens, storm windows, and storm doors. The entry also contained the following statement:

> REMARKS/SPECIAL FEATURES: This is a beautiful home and setting. Sprinkler system in each room, nice tree-shaded pond, automatic intercom system throughout home, built-in master control panel for stereo, AM/FM, turntable, 8 track tape system, central burglar alarm system with control panel in kitchen, 2 built-in china cabinets in dining room. One year BPP Warranty ERA.

After showing this multiple listing entry to the Harbachs and discussing it with them, Ms. Perry took them to see the property described, but no one was there, and after a brief look around, they left. A few days later they went back when the owner, Ms. Chamness, was there and stayed about two hours looking at and talking about the property with Ms. Chamness. In touring the house, Ms. Chamness stood in the door of one of the bedrooms so as to block their view and entry. When asked about the advertised sprinkler system, Ms. Chamness stated that some button-like devices on the ceilings were part of it, but she refused to show them how to operate the system, saying that to do so would ruin her furniture. The sprinkler system was important to the Harbachs, since the house was in a rural area not served by a municipal fire department. Much of the kitchen floor was covered with throw rugs, but in one uncovered place the linoleum was damaged. Ms. Chamness told them it occurred when the freezer was installed and the linoleum would be repaired before the house was sold. She also told them that the burglar alarm system was out of order, but would be fixed before the house was sold, and that some storm windows, which were down, would be put back in place. Shortly after the second visit to the property Mrs. Harbach asked Ms. Perry about the roof, and Ms. Perry then called defendant Hemminger, the listing agent, who told her it was a commercial roof that would outlast a standard roof.

After thinking about the matter for awhile the Harbachs, aided by Ms. Perry, drew up an offer to purchase the place and submitted it to Hemminger. The price offered was $82,000, which they were prepared to pay by assuming the outstanding mortgage balance of $47,015.25 and delivering the remaining $34,984.75 in cash. The Harbachs' offer also contained the following conditions:

> All electrical & plumbing to be in good working order at time of possession. Fireplace equipment in both fireplaces, refrigerator-freezer in kitchen to remain. All items listed in listing agreement to remain. Home to have 1 year warranty paid by seller. Must have legal right of way.

With some minor changes irrelevant to this appeal the plaintiffs' offer was accepted by Ms. Chamness on 25 October 1979. After then, but before closing, Mrs. Harbach went to the house to measure for some rugs, but was unable to measure the bedroom that they had not been permitted to enter during their prior visit, because Ms. Chamness told her that a friend was sleeping in the room and could not be disturbed.

The closing was first scheduled for 20 November 1979, but defendant Hemminger asked Ms. Perry about changing the arrangements to accommodate Ms. Chamness, who was moving out on 8 November 1979 and needed money for the move. Hemminger suggested that a "pre-closing" be held the day Ms. Chamness moved, though the house could not be inspected until after the move. He proposed that at the pre-closing: All the necessary papers be signed, but held by him until all the contract terms were complied with; that plaintiffs accept the house subject to a later inspection and it complying with the contract terms; and that plaintiffs pay the purchase price cash balance, which he would hold in escrow until the repairs needed to comply with the contract terms were accomplished, except for $5,000 which would be given to Ms. Chamness to cover her moving expenses. The Harbachs accepted this proposal and the "pre-closing" was accomplished on 8 November 1979.

Immediately after the "pre-closing," Ms. Chamness moved out and the Harbachs began preparing to move in. In doing so they found several defects that had not been discovered earlier. There were holes in the kitchen and utility room linoleum that

had been covered with rugs before; some window screens and storm windows were still missing; neither the burglar alarm nor the stereo system worked; and in the bedroom that the Harbachs and Ms. Perry had never been permitted to enter or look into they found evidence of water damage from a roof leak. Upon the Harbachs advising Ms. Perry of these problems, Ms. Perry reminded Hemminger that the escrow funds were not to be disbursed until the necessary repairs were made. Thereafter, certain repairs were made—the storm windows and screens were mounted, the stereo system, intercom and burglar alarm were fixed, a minor termite infestation was treated, and the water damage in the bedroom was repaired. But in investigating the leaking roof, it was discovered that the roof was badly deteriorated and had to be replaced, which was ultimately done at a cost of $14,275. It was also discovered that the house had neither a sprinkler system nor a well to supply it, and that to obtain them would cost an estimated $29,904; and that the ceiling buttons which had been pointed out to them as being part of the sprinkler system were part of a smoke alarm system. Ms. Perry talked with both Clarence Hemminger and John Koenig about paying for the roof and other repairs out of the escrow funds, but received no satisfaction from either, and Koenig suggested that he and Ms. Perry look after themselves, "the important people involved," and let the buyers and seller settle the dispute. In March 1980 the escrow funds were finally disbursed by appellants. From these funds, they paid Monika Perry the commission due her for participating in the sale, paid Roxanne Chamness the remainder of the house purchase price, but gave nothing to the plaintiffs because of the defects referred to above.

In suing the several defendants, plaintiffs alleged, in substance, that the representations made in the advertisement by the appellants about the sprinkler system were fraudulently made and that the other defendants knowingly participated therein. In their answer defendants Monika Perry and VIP Real Estate, Inc. admitted that Ms. Perry had acted as the selling agent in the transaction, but denied knowledge of the misrepresentations or any other wrongdoing. In their answer defendants John Koenig, Clarence Hemminger, and Lain and Koenig, Inc. denied the material allegations of the complaint. Defendant Roxanne Chamness was not to be found and though served by publication filed no

answer, and default judgment was entered. During the pendency of the case many other allegations and motions were ruled on by the court that require no discussion, since they are irrelevant to the appeal before us.

*Holland & Poole, by B. L. Poole, for plaintiff appellees.*

*McCoy, Weaver, Wiggins, Cleveland & Raper, by Richard M. Wiggins and E. R. Zumwalt, III, for defendant appellants Lain and Koenig, Inc. and Clarence Hemminger.*

PHILLIPS, Judge.

[1]  The first error assigned by defendant appellants is the denial of their motion for summary judgment. This assignment is overruled without discussion because the record does not show what evidence, if any, was presented to the court in support of the motion. Though the motion states that it is supported by "depositions, answers to interrogatories and admissions of fact, together with the affidavits attached hereto," no such documents are in the record before us; thus we have no basis for concluding that the evidence presented established that no material issue of material fact existed, as the motion alleges. It was incumbent on the appellants to show that their motion had merit; this they have failed to do. Rule 56, N.C. Rules of Civil Procedure; *Singleton v. Stewart,* 280 N.C. 460, 186 S.E. 2d 400 (1972).

[2]  The next two errors assigned by the appellants are the denial of their motions for a directed verdict and for judgment notwithstanding the verdict. These two assignments, in effect, raise but one question — whether the evidence was sufficient to establish plaintiffs' claim that they were damaged by the fraud of the appellants — and we will discuss them together. *See Harvey v. Norfolk Southern Railway,* 60 N.C. App. 554, 299 S.E. 2d 664 (1983). When the evidence recited above is viewed in the light most favorable for the plaintiffs, as the law requires, *Wallace v. Evans,* 60 N.C. App. 145, 298 S.E. 2d 193 (1982), it is plainly sufficient, we think, to establish that plaintiffs were damaged by the actionable fraud of the appellants, and these assignments are overruled.

It is axiomatic in our law that for a plaintiff to prevail in a case of actionable fraud he must show: (1) That the defendant

made a false representation to him as to an existing or past fact which was material to the transaction involved; (2) that defendant either knew the representation was false when it was made or made it recklessly without knowing whether it was true or not; (3) the representation was made with the intention that plaintiff should rely on it; and (4) plaintiff did reasonably rely upon it; and (5) was damaged thereby. *Johnson v. Phoenix Mutual Insurance Co.*, 300 N.C. 247, 266 S.E. 2d 610 (1980). In this case plaintiffs have shown by detailed categorical evidence that appellants falsely represented that the house they were selling them had a facility of great utility and value which it did not have, namely, a sprinkler system in every room, and plaintiffs were substantially damaged by the absence of this costly asset; thus the elements of falsity, materiality and damage, which are not mentioned in appellants' brief, require no further discussion.

The elements of fraud that appellants contend were insufficiently proved in the trial below are those that concern their own mental state and plaintiffs' reliance. They argue that no evidence was presented which tends to show either that they knew that their representation about the house having a sprinkler system in every room was false or that they made the representation recklessly or that they intended for plaintiffs to rely on it and be deceived by it. While it is true that the evidence does not affirmatively show that appellants *knew* that their representation about the sprinkler system was false, it also shows that though the house had no sprinkler system they nevertheless positively represented that it did in selling the house for $30,000 more than it was worth. Falsehoods are usually told for a purpose and that appellants went to the trouble to write one out and use it in the setting that existed warrants the inference that the representation was recklessly made without regard for its truth and with the intention of deceiving plaintiffs by it. *Zager v. Setzer*, 242 N.C. 493, 88 S.E. 2d 94 (1955). And, of course, the inference that appellants meant to deceive the plaintiffs from the outset is further supported by appellants' later conduct in distributing the "pre-closing" escrow funds to the fraudulent seller after promising to use them to pay for any defects discovered or repairs needed.

As to the element of reliance, appellants argue that the evidence shows that plaintiffs did not rely upon their false representation, and if they did it was unreasonable for them to do so.

In support of this argument appellants point to plaintiffs' visits to the premises, their inquiry of Ms. Chamness concerning the button-like objects on the ceilings and her response that they were part of the sprinkler system. But this evidence does not necessarily mean, as appellants argue, that plaintiffs relied on Ms. Chamness or their own observations, or that their failure to notice that the house had no sprinkler system was unreasonable and due to their own inattention. The evidence plainly shows that plaintiffs were first attracted to the property by the appellants' representations about it, and that those representations were apparently based on their own expert and superior knowledge as real estate agents. Under the circumstances recorded, who, if anybody, the plaintiffs relied upon in buying the property, and whether they acted reasonably were questions of fact for the jury, rather than questions of law for the court. Certainly, we cannot state as a matter of law that the evidence shows that plaintiffs did not rely on the appellants' written declaration that the house had a sprinkler system. Nor, in our opinion, does the evidence unerringly show that plaintiffs had no right to rely on appellants' representation because they should have observed that the house had no sprinkler system. Plaintiffs' own real estate agent, Monika Perry, much more experienced in such matters than plaintiffs were, inspected the premises and was also deceived. We do not believe that the law required plaintiffs to be more knowledgeable or discerning.

Appellants cite as dispositive on the question of reliance several decisions of our Supreme Court and this Court in each of which a buyer of real estate was denied redress even though the owner or agent had materially misrepresented the extent or condition of the property involved. But in each of the cases relied upon, the buyer's evidence clearly established that he did not rely upon the false representations, whereas plaintiffs' evidence made no such showing. For example: In *Russo v. Mountain High, Inc.*, 38 N.C. App. 159, 247 S.E. 2d 654 (1978), where the tract bought contained only 1,589.49 acres instead of the 4,271.4 represented, the evidence showed that plaintiff was truthfully told by the agent that the acreage representation was based upon *his* file and that this second-hand information was acceptable to plaintiff. In *Harding v. Southern Loan & Insurance Co.*, 218 N.C. 129, 10 S.E. 2d 599 (1940), the evidence showed that plaintiff knew that the

representations of defendant's agent as to the condition of the hotel being sold were based upon statements and reports that the agent had received from a contractor and others. And in both *Peyton v. Griffin*, 195 N.C. 685, 143 S.E. 525 (1928) and *Tarlton v. Keith*, 250 N.C. 298, 108 S.E. 2d 621 (1959), the evidence showed that each buyer knew that the boundary lines that were incorrectly pointed out to him by the agent had been pointed out to the agent by the owner and that the agent did not purport to know for a fact where the lines were. But the evidence in this case does not purport to show that appellants either obtained their information about the sprinkler system from someone else or that they notified plaintiffs that was the case.

The appellants' other assignments of error, supported by neither argument nor citations of authority, are likewise without merit, in our opinion.

No error.

Judges WEBB and JOHNSON concur.