MAMIE G. DOUGLAS v. EUGENE M. DOUB AND KELLY S. DOUB

No. 8821SC1112

(Filed 19 September 1989)

1. **Rules of Civil Procedure § 56.7— summary judgment—appeal after verdict—not reviewed**

The denial of defendant wife's motion for summary judgment in an unfair and deceptive trade practice action arising from the sale of a condominium was not reviewed because a verdict had been reached by a jury after the presentation of all the evidence and final judgment had been entered.

2. **Fraud § 12.1— sale of condominium—directed verdict for defendant denied—no error**

The trial court did not err in an action for fraud arising from the sale of a condominium by denying defendant husband's motion for a directed verdict where the defendant husband represented to the plaintiff that recent repairs had been made to the condominium because there had been "some problems with a bursted [sic] water pipe"; there was no evidence in the record that recent repairs had been made to the condominium because of a "bursted [sic] water pipe"; and there was ample evidence from which a jury could conclude that defendant husband knew the foundation had been cracked for some reason other than a broken water pipe. The evidence supports the plaintiff's proposition that she relied upon the defendant husband's statement, purchased the condominium, and sustained damages by virtue of subsequent sinkage of

DOUGLAS v. DOUB

[95 N.C. App. 505 (1989)]

the condominium because defendant husband was aware of the condominium's two previous sinkings and elected not to inform the plaintiff, but instead, misrepresented the facts and it is immaterial that defendant husband may have thought the problem with the foundation had been corrected. Defendant's argument that plaintiff had had every opportunity to make independent inquiries was rejected because one to whom a positive and definite representation has been made is entitled to rely on such representation, defendant husband had peculiar knowledge of the facts, whether plaintiff's reliance on the representations was reasonable was a question properly submitted to the jury, and the alleged fraud was of a type reasonably calculated to induce the purchaser to forego investigation.

**3. Fraud § 12.1; Unfair Competition § 1— defendant wife—husband acting as agent—directed verdict denied**

The trial court did not err in an action for unfair trade practices and fraud arising from the sale of a condominium by denying defendant wife's motion for directed verdict, even though there was no evidence that defendant wife made any representations to the plaintiff regarding the condominium, where defendant wife received a benefit when plaintiff assumed a note and deed of trust which defendants had executed, relieving the defendant wife from a $39,950 obligation. The evidence relating to a loan assumption is a factual circumstance from which a jury could infer that defendant husband was authorized to act for defendant wife.

**4. Unfair Competition § 1— sale of condominium—submission of issue to jury—no prejudicial error**

The trial court did not commit prejudicial error in an action for fraud and unfair competition arising from the sale of a condominium by submitting to the jury an issue concerning whether the purchase was in commerce or affected commerce where the trial court made findings independent of the jury verdict and the undisputed evidence supported the findings.

**5. Rules of Civil Procedure § 59— sale of condominium—fraud and unfair and deceptive trade practice—motion for a new trial for excessive damages—denied**

The trial court did not err in an action for fraud and unfair and deceptive trade practices arising from the sale of a condominium by denying defendant's motion for a new trial

under N.C.G.S. § 1A-1, Rule 59, based on an allegedly excessive jury verdict. Although the trier of fact should consider any benefits which plaintiff received while in possession of the condominium, that issue was before the jury and a person who has been subjected to an unfair or deceptive trade practice or act who does not retain the property is entitled to be restored to his original condition.

APPEAL by defendants from *Gudger (Lamar), Judge.* Judgment entered 12 May 1988 in Superior Court, FORSYTH County. Heard in the Court of Appeals 9 May 1989.

*David B. Hough for plaintiff-appellee.*

*Burns and Price, by Robert E. Price, Jr., for defendant-appellants.*

GREENE, Judge.

In this civil action, plaintiff claims defendants committed fraud and unfair or deceptive trade practices in their sale of a condominium to the plaintiff. The jury found for the plaintiff, and the trial court entered judgment accordingly. Defendants appeal.

The evidence tends to show Heather Hills Executive Golf Village, Inc. (Heather Hills) constructed, in the late 1970's, several condominiums, in particular one located at 3693 Heathrow Drive (condominium). After selling the condominium, portions of the foundation sank into the ground in 1981, causing cracks in the foundation, which were repaired by Heather Hills. Before making these repairs, Heather Hills obtained the services of a soil inspector who advised that the foundation problem was not "related to soft soil." Sometime later, and after the repairs, the cracks reappeared, and the owners sued Heather Hills. In settlement of that lawsuit, Heather Hills repurchased the condominium, made additional repairs to the foundation and reoffered the property for sale. All of the repairs were done under the supervision of Eugene M. Doub (defendant husband). Prior to making the repairs the second time, Heather Hills again employed a soil engineer to ascertain the problem, and he determined that water was "running down the side of the foundation and washing out the dirt that the footings [were] sitting on."

In December 1983, plaintiff as a prospective purchaser of the condominium in question testified:

A. I asked him [Eugene M. Doub] why were there stucco—new stucco, new sidewalks out front.

Q. And what, if anything, did Mr. Doub say in response to that question?

A. He said that it had been cold that winter and there were some problems with a bursted [sic] waterpipe.

The defendant husband testified that in response to the plaintiff's inquiry:

I told her that the downspout had been shooting water down the corner and had caused that area to settle, but it was in the process of being repaired.

On 14 January 1984, plaintiff and defendant husband, shown on the contract as the "seller," entered into a written "Offer to Purchase and Contract" on the condominium. The agreed purchase price was $47,500, and the plaintiff paid a $500 deposit to plaintiff's real estate agent who was to hold the property in escrow pending completion of the sale. The contract was contingent on plaintiff obtaining a loan by 17 February 1984, which she was not successful in securing. On 3 March 1984, the parties entered into a second "Offer to Purchase and Contract," and again the contract listed defendant husband as the seller. The purchase price reflected in the second agreement was $47,980, and plaintiff paid $7,082 as a cash deposit "to be held in escrow by Eugene M. Doub" pending the completion of the sale. Apparently the second contract was entered into after defendant husband had agreed pursuant to a suggestion of the plaintiff's real estate agent to secure a loan commitment in his own name and to transfer the property to the plaintiff. After receiving a loan commitment from the Pfefferkorn Company and with the proceeds from that loan, on 16 March 1984 defendant husband and his wife, Kelly S. Doub (defendant wife) purchased, as tenants by the entirety, the condominium from Heather Hills. The corporate deed was executed by defendant husband as president and defendant wife as secretary. The loan from the Pfefferkorn Company was in the amount of $39,950. The note to the Pfefferkorn Company was executed by the defendants in their individual names, and the loan was secured by a deed of trust on the condominium. On 12 April 1984, the defendants conveyed the property to the plaintiff, with the plaintiff assuming the note and deed of trust placed on the property by the defendants. On the

same date, the plaintiff executed a note payable to defendant husband in the amount of $998, which note was also secured by a deed of trust on the condominium property. The note to defendant husband was paid in full on 7 June 1984.

In early 1985, after the plaintiff moved into the condominium, she noticed the foundation had certain cracks and that the sidewalk and a portion of the parking lot in front of the condominium were sinking into the ground. She further specifically testified:

> The kitchen floor started breaking away from the baseboard and a hole appeared in the corner between the walls and the refrigerator. There were cracks along side of—of the overhead over the—over the cabinets and along side the doors. The door frame began coming apart from the—the door began to come apart from the door frame.

A geotechnical engineer testified for the plaintiff. In December 1987, he conducted tests, boring around the perimeter of the condominium, and he determined the condominium had been constructed approximately thirty feet from the center of an area, located in front of the condominium, containing underground organic fill and that over time as the organic fill decomposed, the ground would sink away, causing the sidewalk, parking area and foundation itself to sink into the ground. A civil engineer, accepted as an expert in the area of soil concentration, testified for the defendant. He visited the property in November 1987 and observed the cracks in the foundation and the depressions in the pavement and sidewalk in front of the condominium. He concluded that the pavement and the "parking lot settled possibly due to a sink hole" which "caused the foundation to settle" under the condominium. Defendant husband testified he never "found any landfills" on the building site.

The trial court submitted the following issues to the jury which were answered as indicated:

> 1. Was Mamie G. Douglas induced to purchase 3693 Heathrow Drive, a townhouse, by the fraudulent representations of the Defendant Eugene M. Doub?

> ANSWER: Yes.

2. Did the conduct of the Defendant Eugene M. Doub which induced the purchase of said property constitute an unfair or deceptive act or practice in or affecting commerce?

ANSWER: Yes.

3. Was Eugene M. Doub the agent of the Defendant Kelly S. Doub at the time of said purchase?

ANSWER: Yes.

4. What amount, if any, is the Plaintiff entitled to recover?

ANSWER: $33,074.30.

Pursuant to the jury verdict, the trial court entered a judgment which in pertinent part is as follows:

1. The damages of the Plaintiff be, and hereby are, trebled to Ninety-Nine Thousand Two Hundred Twenty-Two Dollars and Ninety Cents ($99,222.90) pursuant to NCGS Section 75-16.

2. The Plaintiff have and recover of the Defendants, jointly and severally, the sum of Ninety-Nine Thousand Two Hundred Twenty-Two Dollars and Ninety Cents ($99,222.90) . . . .

3. The Plaintiff shall convey all her interest in the improved real property located at 3693 Heathrow Drive, Winston-Salem, North Carolina to the Defendants within thirty (30) days from the execution of this Judgment. This conveyance shall be made subject to the outstanding indebtedness to the Pfefferkorn Company; which indebtedness the Defendants incurred and are obligated to pay. In the event that an appeal is made from this Judgment, the requirement that the Plaintiff shall convey her interest in the said real property to the Defendants shall be stayed until a final disposition is made of the said appeal.

Prior to trial, the defendant wife moved for summary judgment, which motion was denied. The trial court likewise denied the defendants' motions for directed verdict made at the end of the plaintiff's case and at the end of all the evidence. After the return of the jury verdicts, the trial court denied the defendants' motion for a judgment notwithstanding the verdict and denied defendants' motion for a new trial on the grounds that the award of damages by the jury was excessive.

DOUGLAS v. DOUB

[95 N.C. App. 505 (1989)]

The issues presented are: I) whether the trial court erred in denying the defendant wife's motion for summary judgment; II) whether the trial court erred in denying defendant husband's motion for directed verdict; III) whether the trial court erred in denying defendant wife's motion for directed verdict; IV) whether the trial court erred in allowing the jury to determine if conduct of the defendant husband constituted "an unfair or deceptive act or practice in or affecting commerce?"; and V) whether the trial court erred in denying defendants' motion for a new trial on the grounds that the damages awarded by the jury were excessive.

I

[1] The trial court's denial of defendant wife's motion for summary judgment is an "interlocutory order and is not appealable." *Harris v. Walden*, 314 N.C. 284, 286, 333 S.E.2d 254, 256 (1985). Furthermore, "denial of a motion for summary judgment is not reviewable during appeal from a final judgment rendered in a trial on the merits." *Id.* Accordingly, we do not review the trial court's denial of defendant wife's motion for summary judgment as a verdict has been reached by a jury after the presentation of all the evidence and final judgment has been entered.

II

[2] The defendant husband argues the trial court erred in denying his motion for directed verdict. We disagree.

The purpose of a motion for directed verdict is to "test the legal sufficiency of the evidence to take the case to the jury and to support a verdict for plaintiffs; that in determining such a motion the evidence should be considered in the light most favorable to plaintiffs, and the plaintiffs should be given the benefit of all reasonable inferences; and that the motion should be denied if there is any evidence more than a scintilla to support plaintiffs' *prima facie* case in all its constituent elements." *Wallace v. Evans*, 60 N.C. App. 145, 146, 298 S.E.2d 193, 194 (1982).

The elements of fraud, which constitutes the basic claim of the plaintiff are: "(1) that the defendant made a false representation as to an existing or past fact which was material to the transaction involved; (2) that defendant either knew the representation was false when it was made or made it recklessly without knowing whether it was true or not; (3) the representation was made with the intention that plaintiff should rely on it; (4) plaintiff did reason-

ably rely upon it; and (5) was damaged thereby." *Harbach v. Lain and Keonig, Inc.,* 73 N.C. App. 374, 379-80, 326 S.E.2d 115, 118-19, *disc. rev. denied,* 313 N.C. 600, 332 S.E.2d 179 (1985).

In the light most favorable to the plaintiff, the defendant husband represented to the plaintiff that recent repairs had been made to the condominium because there had been "some problems with a bursted [sic] water pipe." We find no evidence in the record to support that recent repairs had been made to the condominium because of "a bursted [sic] water pipe." There is ample evidence from which a jury could conclude that defendant husband knew the foundation had cracked for some reason other than a busted water pipe. Consequently, we believe the jury could determine that defendant husband intended for the plaintiff to rely upon his representation and to act upon it in purchasing the property. The evidence likewise supports the plaintiff's proposition that she relied upon the defendant husband's statement, purchased the condominium, and sustained damages by virtue of subsequent sinkage of the condominium. Defendant husband was aware of the condominium's two previous sinkings, and for whatever reason, he elected not to inform the plaintiff, but instead, in the light most favorable to the plaintiff, misrepresented the facts. The fact plaintiff was deceived by defendant husband's failure to disclose true facts "may be reasonably inferred from [her] purchase of the house." *Carver v. Roberts,* 78 N.C. App. 511, 513-14, 337 S.E.2d 126, 128 (1985). It is immaterial that defendant husband may have thought the problem with the foundation had been corrected with the installation of a gutter drain line leading from the gutter downspout.

We also reject defendants' argument that the plaintiff had every opportunity to make independent inquiries as to why the recent repairs had been made to the condominium and that the failure to do so bars her recovery. "One to whom a *positive* and *definite* representation has been made is entitled to rely on such representation if the representation is of a character to induce action by a person of ordinary prudence, and is reasonably relied upon." *North Carolina National Bank v. Carter,* 71 N.C. App. 118, 123, 322 S.E.2d 180, 184 (1984) (emphasis added). The defendant husband's representation was "positive and definite," and he had peculiar knowledge of the facts. *See Libbey Hill Seafood Restaurants, Inc. v. Owens,* 62 N.C. App. 695, 698, 303 S.E.2d 565, 568, *disc. rev. denied,* 309 N.C. 321, 307 S.E.2d 164 (1983) (vague statements of persons without peculiar knowledge of the facts are not action-

able); *Calloway v. Wyatt*, 246 N.C. 129, 134, 97 S.E.2d 881, 885 (1957) (where buyer and seller do not have equal access to the information about which the representation is made, one has the right to rely on the representations as to the conditions of real property). Whether plaintiff's reliance on the representations was reasonable "was a question properly submitted to the jury." *NCNB*, 71 N.C. App. at 123-24, 322 S.E.2d at 184. Furthermore, the alleged fraud was of a type reasonably calculated to induce the purchaser to forego investigation or "to forbear inquiries which [the purchaser] would otherwise have made . . . ." *Harding v. Southern Lawn and Insurance Co.*, 218 N.C. 129, 134-35, 10 S.E.2d 599, 602 (1940); *Bolick v. Townsend Co.*, 94 N.C. App. 650, 656, 381 S.E.2d 175, 178 (1989).

Accordingly, we conclude the trial court correctly denied the defendant husband's motion for directed verdict.

### III

[3] The defendant wife argues directed verdict for her was appropriate because no evidence existed she made any representations to the plaintiff. There is no evidence that defendant wife made any representations to the plaintiff regarding the condominium, and she can be liable only if defendant husband was acting, at the time he made the misrepresentations, as agent for the defendant wife.

A marital relationship alone is not sufficient to establish agency between spouses. However, agency of the husband for his wife may be "shown by evidence of facts and circumstances which authorize a reasonable inference that he was authorized to act for her." *Passmore v. Woodard*, 37 N.C. App. 535, 540, 246 S.E.2d 795, 800 (1978). "The wife's retention of benefits from a contract negotiated by the husband is a factual circumstance giving rise to such an inference." *Id.* The fact that the "principal did not know or authorize the commission of the fraudulent acts" is immaterial. *Norburn v. Mackie*, 262 N.C. 16, 23, 136 S.E.2d 279, 284 (1964).

The plaintiff argues, and we agree that defendant wife received a benefit when plaintiff assumed the note and deed of trust which defendants had executed to the Pfefferkorn Company. The assumption of the loan by the plaintiff relieved the defendant wife from a $39,950 obligation. While there is no evidence defendant wife ever

received any money from the sale of the condominium to the plaintiff, the evidence relating to the loan assumption is a factual circumstance from which a jury could infer that defendant husband was authorized to act for defendant wife.

Accordingly, the trial court did not err in denying the defendant wife's motion for directed verdict.

IV

[4] The defendants next argue the trial court erred in submitting Issue No. 2 to the jury. We agree, although we do not find the error to be prejudicial.

"In unfair trade practices cases, the jury need only find whether the defendant committed the acts alleged; it is then for the court to determine as a matter of law whether these acts constitute unfair or deceptive practices in or affecting commerce." *Lee v. Keck*, 68 N.C. App. 320, 330, 315 S.E.2d 323, 330, *disc. rev. denied*, 311 N.C. 401, 319 S.E.2d 271 (1984); *but see Mapp v. Toyota World Inc.*, 81 N.C. App. 421, 425, 344 S.E.2d 297, 300 (1986) (court approves of trial court's submission of following issue to jury: Was the making of such representation by the defendant conduct in commerce or did it affect commerce?). While the trial court erred in submitting Issue No. 2 to the jury, it was harmless error as the trial court made findings independent of the jury verdict.

> 2. The conduct, including the said fraudulent representations, of Defendant Eugene Doub which induced the said purchase was in commerce or did affect commerce.
>
> . . . .
>
> 5. The fraud of the Defendants which induced the said purchase by the Plaintiff constitutes an unfair and deceptive trade practice in violation of NCGS Section 75-1.1.

*See Lee*, 68 N.C. App. at 330, 315 S.E.2d at 330 (harmless error to charge on unfair or deceptive trade practice as instructions were unnecessary as issue was one of law); *Chastain v. Wall*, 78 N.C. App. 350, 357, 337 S.E.2d 150, 154 (1985), *disc. rev. denied*, 316 N.C. 375, 342 S.E.2d 891 (1986) (harmless error to submit issue to jury as to whether defendant's conduct was "in commerce or did it affect commerce," where trial court made independent determination that defendant's conduct violated N.C.G.S. Sec. 75-1.1); *Medina v. Town & Country Ford*, 85 N.C. App. 650, 658-59, 355

S.E.2d 831, 836 (1987), *aff'd*, 321 N.C. 591, 364 S.E.2d 141 (1988) (the trial court's submission to jury of issue of whether defendant's conduct constituted "unfair and deceptive facts or practices in commerce" was harmless error where trial court made "independent determination that defendant's acts constituted unfair and deceptive trade practices").

The jury's determination that defendant husband committed a fraudulent act in inducing the plaintiff to purchase the condominium was sufficient to support the trial court's finding and subsequent conclusion that the defendants "engaged in unfair and deceptive trade practices in violation of N.C.G.S. Sec. 75-1.1." In order to qualify as a violation of N.C.G.S. Sec. 75-1.1, the act must both be unfair or deceptive and in the conduct of trade or commerce. Proof of fraud necessarily constitutes an unfair and deceptive act. *Winston Realty Co. v. G.H.G. Inc.*, 314 N.C. 90, 97, 331 S.E.2d 677, 681 (1985). The sale of residential housing by those engaged in the business of selling real estate is trade or commerce within the meaning of N.C.G.S. Sec. 75-1.1. *Rosenthal v. Perkins*, 42 N.C. App. 449, 454, 257 S.E.2d 63, 67 (1979); *cf. Blackwell v. Dorosko*, 93 N.C. App. 310, 314, 377 S.E.2d 814, 818 (1989) (*private* vendor of realty not subject to N.C.G.S. Sec. 75-1.1). The evidence is undisputed that Heather Hills and its president, defendant husband, were in the business of contracting and selling condominiums, and this undisputed evidence supports the findings of the trial court that the acts complained of were "in commerce or did affect commerce."

V

[5] The defendants finally argue the trial court erred in denying their Rule 59 motion for a new trial. N.C.G.S. Sec. 1A-1, Rule 59 (1983). Specifically, defendants assert the jury verdict of $33,074.30 was excessive and that it was not supported by the evidence.

A new trial may be granted in the discretion of the trial judge, for "(6) Excessive or inadequate damages appearing to have been given under the influence of passion or prejudice"; and "(7) Insufficiency of the evidence to justify the verdict . . . ." N.C.G.S. Sec. 1A-1, Rule 59(a)(6) & (7); *See Worthington v. Bynum*, 305 N.C. 478, 482, 290 S.E.2d 599, 602 (1982) (trial court's grant or denial of motion to set aside a verdict and order a new trial is discretionary).

The record shows the plaintiff introduced evidence that she expended, in purchasing and while she owned the condominium, the following amounts: Earnest money deposit of $500, down payment of $7,032, payment on note to defendant husband in the amount of $998, closing costs in the amount of $109.81, moving expenses in the amount of $350, monthly payments to the Pfefferkorn Company in the amount of $23,490, and improvements to the condominium in the amount of $620. These expenditures total $33,099.81. The defendants argue nonetheless that the defendants "should be entitled to a credit on damages" awarded to the plaintiff for the plaintiff's use of the property during the time which she lived in the condominium. While we agree with the defendants that in determining the damages to which the plaintiff is entitled, that the trier of fact should consider any benefits which plaintiff received while in possession of the condominium, this issue was in fact before the jury, and the trial court instructed the jury as to the defendants' contentions in this regard.

In assessing damages for a party who has been subjected to an unfair or deceptive practice or act, when that person does not retain the property, the party is entitled to be restored to his original condition. *Morris v. Bailey*, 86 N.C. App. 378, 385-86, 358 S.E.2d 120, 125 (1987) ("give back to him that which was lost as far as may be done by compensation in money"). Here, the plaintiff, by virtue of the judgment of the trial court, and with the consent of the parties, was required to relinquish her interest in the condominium. Accordingly, as the award of damages essentially restored plaintiff to her condition prior to the sale, the award was not excessive, and the trial court did not abuse its discretion in refusing to set aside the award and declare a new trial.

No error.

Judges JOHNSON and COZORT concur.