EARL RAY CAMP, AND WIFE JOYCE DIANNE CAMP, PLAINTIFFS v. MITCHELL H. LEONARD, AND WIFE, KIMBERLY B. LEONARD, D/B/A MITCH LEONARD CONSTRUCTION, AND INDUSTRIAL FEDERAL SAVINGS BANK, DEFENDANTS

No. COA98-588

(Filed 15 June 1999)

### 1. Appeal and Error— appealability—interlocutory order— judgment for fewer than all defendants

An appeal from a summary judgment for some of the defendants in an action arising from the construction of a house was interlocutory but appealable where the same factual issues applied to all claims against the various defendants; many of the elements and the amount of damages alleged are identical in all counts against all parties; and several different proceedings may bring about inconsistent verdicts relating to the cause of plaintiffs' injuries.

### 2. Construction Claims— contractor's wife—no benefits received—summary judgment

The trial court did not err by granting summary judgment for defendant Mrs. Leonard on causes of action for breach of contract to sell land, unfair trade practices, breach of contract to build a dwelling house, and other claims arising from the construction of a house where Mrs. Leonard signed the warranty deed but only met plaintiffs briefly at the closing, did not sign the sales contract or construction contract, no evidence indicated that she was involved in her husband's construction business, she was not a partner or joint venturer, all the evidence shows that any funds from the lot sale or building contract went exclusively to her husband, and plaintiffs presented no evidence that defendant Mrs. Leonard received money or any other benefit from either contract.

### 3. Construction Claims— lender—no duty to inspect progress

The trial court did not err by granting summary judgment for defendant Industrial Federal Savings Bank on claims for breach of contract, breach of a duty of good faith, negligence, conspiracy, unfair trade practices, and willful and wanton conduct arising from the construction of a house where plaintiffs conceded on appeal that their claim must fail unless Industrial, the construction lender, owed a duty to inspect for plaintiffs' benefit. The Agreement here did not expressly provide an affirmative

duty by Industrial to inspect the construction progress of plaintiffs' home for plaintiffs' benefit, and, while Industrial may have assured plaintiffs that the defendant Mr. Leonard could be trusted with advances from the construction loan account, such assurances do not indicate that Industrial took on the duty of monitoring construction for plaintiffs' benefit or any other fiduciary duty.

Appeal by plaintiffs from judgments entered 28 January 1998 and 2 February 1998 by Judge Jerry Cash Martin in Rowan County Superior Court. Heard in the Court of Appeals 26 January 1999.

*W. L. Stafford, Jr. for plaintiff-appellants.*

*Richard R. Reamer for defendant-appellee Kimberly B. Leonard; Stoner, Bowers & Gray, P.A., by Bob W. Bowers, and Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Reid L. Phillips and Erin L. Roberts for defendant-appellee Industrial Federal Savings Bank.*

HUNTER, Judge.

Plaintiffs appeal summary judgment in favor of defendant Kimberly B. Leonard by order of 28 January 1998, and defendant Industrial Federal Savings Bank by order of 2 February 1998.

The purpose of summary judgment is to eliminate formal trials where only questions of law are involved. *Gardner v. Gardner*, 334 N.C. 662, 435 S.E.2d 324 (1993). It may be sustained only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (1990). In passing upon a motion for summary judgment, the court must view the evidence presented by both parties in the light most favorable to the nonmoving party. *Davis v. Town of Southern Pines*, 116 N.C. App. 663, 449 S.E.2d 240 (1994), *disc. review denied*, 339 N.C. 737, 454 S.E.2d 648 (1995).

Viewing the evidence in the light most favorable to the plaintiffs, it shows that Earl Ray Camp ("Mr. Camp") and wife Joyce Dianne Camp ("Mrs. Camp") entered into a written contract on or about 15 May 1995 to purchase lot thirty-seven ("lot 37") at Pebble Point Subdivision in Rowan County from defendants Mitchell H. Leonard

("Mr. Leonard") and Kimberly B. Leonard ("Mrs. Leonard") for the sum of $55,000.00. Plaintiffs entered into a written contract on 13 October 1995 with defendant Mitch Leonard Construction for the construction of a house on lot 37, along with a pier and dredging necessary to obtain a permit for a pier, for the sum of $126,000.00. The construction contract provided, among other things, that the plaintiffs agreed "to make payments on account hereof upon presentation of proper lien waivers, as the work progresses and as follows: 1 draw on the [tenth] of each month after construction begins." Prior to 22 November 1995, plaintiffs applied to defendant Industrial Federal Savings Bank ("Industrial") for a construction loan on lot 37 and the house to be built thereon by defendant Mitch Leonard Construction.

On 22 November 1995, plaintiffs met at Industrial's office for the purposes of closing the purchase of lot 37 from defendants Leonard and closing the purchase/construction loan of $135,000.00 from Industrial. At the same closing, plaintiffs and defendant Mitchell H. Leonard, as contractor, executed a construction loan agreement making certain covenants with defendant Industrial, which provided in part, that Industrial is authorized to disburse funds in the construction loan account "only in proportion to its inspector's report of progress, or by Architect's or Superintendent's Certificate accompanied by a proper affidavit from the contractor." Using $9,000.00 advanced from the construction loan towards the purchase price of lot 37 from defendants Leonard, plaintiffs had $126,000.00 left in the construction loan account with Industrial.

Within one or two days after the closing at Industrial, construction began on plaintiffs' house on lot 37. Plaintiffs presented evidence that when Mr. Camp went to Industrial's office for the first advance, the amount was left blank because, according to Industrial employee William C. Rains, Jr., they "did not know how much money [Mr.] Leonard would need," but that Mr. Camp should not worry about it because "[Mr.] Leonard was good for it." Plaintiffs also presented evidence that defendant Industrial informed them that defendant Mr. Leonard was a "good contractor," and that plaintiffs need not worry about the money aspects of the construction.

On 13 December 1995, Mr. Leonard obtained an advance from plaintiffs' construction loan account with Industrial in the amount of $43,000.00. On 12 January 1996, he obtained a second advance in the amount of $40,000.00. Mr. Leonard received a third advance for $17,800.00 on 14 February 1996, and a fourth advance for $14,000.00

CAMP v. LEONARD

[133 N.C. App. 554 (1999)]

on 13 March 1996. All of the advances made to Mr. Leonard were made with the authorization and signature of Mr. Camp. Plaintiffs presented evidence that as to the second and third advances, Industrial told Mr. Camp that it was not necessary for him to come to the office, because Industrial would make the disbursements and mail him the documentation for advances. While this procedure was employed for the second advance, Mr. Camp went to Industrial's offices for the third advance, expressing concern about the large amount of the advances to Mr. Leonard. Industrial employee Rains informed Mr. Camp that $17,800.00 was probably more than Mr. Leonard was entitled to at the time, and that Mr. Leonard was probably only entitled to eleven or twelve thousand dollars, but "I went ahead and let him have some extra, but he's good for it."

Sometime in late April 1996, Mr. Camp had a disagreement with Mr. Leonard over the specifications concerning a heat pump for the house, and Mr. Leonard quit construction on the house due to the disagreement. At the time, various items were left unfinished in the construction of the house, and the pier was never built. Plaintiffs contend the costs for the unfinished items is $32,101.48; however, only $9,713.76 remained in their construction loan account with defendant Industrial after the aforementioned advances to Mr. Leonard.

Plaintiffs instituted suit on 17 April 1997 against defendants Leonard for breach of contract to sell land and breach of contract to build a dwelling house; against defendant Industrial for breach of contract, breach of duty of good faith, and negligence; and against all defendants for conspiracy, unfair trade practices, and willful and wanton conduct.

[1] Plaintiffs first argue that their appeal is not interlocutory, and is immediately appealable since failure to allow such an appeal would impair their substantial rights. Entry of judgment for fewer than all the defendants is not a final judgment and may not be appealed in the absence of certification pursuant to Rule 54(b) unless the entry of summary judgment affects a substantial right. *See* N.C. Gen. Stat. § 1-277 (1996); N.C. Gen. Stat. § 1A-1, Rule 54(b) (1990); N.C. Gen. Stat. § 7A-27(d) (1995). Our Supreme Court has held that a grant of summary judgment as to fewer than all of the defendants affects a substantial right when there is the possibility of inconsistent verdicts, stating that it is "the plaintiff's right to have one jury decide whether the conduct of one, some, all or none of the defendants caused his injuries . . . ." *Bernick v. Jurden*, 306 N.C. 435, 439, 293

S.E.2d 405, 409 (1982). This Court has created a two-part test to show that a substantial right is affected, requiring a party to show "(1) the same factual issues would be present in both trials and (2) the possibility of inconsistent verdicts on those issues exist." *N.C. Dept. of Transportation v. Page*, 119 N.C. App. 730, 736, 460 S.E.2d 332, 335 (1995).

In the present case, the same factual issues apply to all claims against the various defendants, and many of the elements and amount of damages alleged are identical in all counts against all parties. Because several different proceedings may bring about inconsistent verdicts relating to the cause of plaintiffs' injuries, we find that plaintiffs have a substantial right to have the liability of all defendants determined in one proceeding, and therefore we address their appeal.

[2] The trial court granted summary judgment for defendant Mrs. Leonard on causes of action for breach of contract to sell land, unfair trade practices as to sales contract, breach of contract to build dwelling house, unfair trade practices as to construction, conspiracy, and willful and wanton conduct. The causes of action relating to the sales contract are based on the assertion that defendants Leonard falsely informed plaintiffs during negotiation that a pier could be built on lot 37, which is a waterfront lot. All other causes of action concern the construction of plaintiffs' home on lot 37.

Viewing the evidence in the light most favorable to plaintiffs, it indicates that Mrs. Leonard did sign the warranty deed conveying lot 37 to the plaintiffs; however, she only met the plaintiffs briefly at the real estate closing. The evidence indicates that Mrs. Leonard did not sign the sales contract or construction contract. No evidence indicated that she was actively involved in her husband's construction business and all of the evidence shows that she was not a partner or joint venturer. The fact that Mrs. Leonard signed the deed conveying the subject property to the plaintiffs does not indicate that she was party to or received benefits from the sales contract or construction contract. A wife's retention of benefits from a contract negotiated by the husband is a factual circumstance giving rise to an inference that the husband was authorized to act for her under the contract. *Passmore v. Woodard*, 37 N.C. App. 535, 246 S.E.2d 795 (1978); *Douglas v. Doub*, 95 N.C. App. 505, 383 S.E.2d 423 (1989). In *Douglas*, this Court held that while defendant wife did not receive money from the sale of the condominium, she nevertheless did receive a benefit from the sales contract when plaintiff assumed the note and deed of

trust, relieving her from a $39,950.00 obligation. *Id.* at 513-14, 383 S.E.2d at 427-28. In the case *sub judice*, all the evidence shows that any funds from the lot sale or building contract went exclusively to Mr. Leonard. Plaintiffs have presented no evidence that Mrs. Leonard received money, or any other benefit, from either contract. It is the party moving for summary judgment who has the burden of establishing the lack of any triable issue of fact. *Pembee Mfg. Corp. v. Cape Fear Const. Co.*, 313 N.C. 488, 329 S.E.2d 350 (1985). Mrs. Leonard has shown lack of triable issue of fact, and we therefore sustain the summary judgment in her favor as to all claims.

[3] Plaintiffs brought claims against defendant Industrial for breach of contract, breach of duty of good faith, negligence, conspiracy, unfair trade practices, and willful and wanton conduct. Plaintiffs concede that all claims against Industrial must fail unless this Court finds that, as a matter of law, Industrial owed the plaintiffs a duty to inspect the construction of their home for *plaintiffs' benefit*. Due to plaintiffs' concession, we will focus our inquiry on the issue of defendant Industrial's duty to inspect construction of the plaintiffs' home for plaintiffs' benefit. However, we note that we do not necessarily agree with, but will abide by, plaintiffs' concession that all causes of action in their complaint necessarily depend on a determination of this issue.

Defendant Industrial argues that courts have generally held that liability for construction defects "will be imposed on construction lenders only where contractual provisions or lender assurances justify purchaser reliance on inspections for purchaser's benefit." *See* Jeffrey T. Walter, *Financing Agency's Liability to Purchaser of New Home or Structure for Consequences of Construction Defects*, 20 A.L.R. 5th 499, 508 (1994). Other courts have also held the relationship between borrower and lender is not a confidential one. *Federal Land Bank of Baltimore v. Fetner*, 410 A.2d 344 (Pa. Super. 1979), *cert. denied*, 446 U.S. 918, 64 L. Ed 2d 273 (1980). Unless a further obligation is assumed by the lender, its inspection of the premises to be mortgaged is made only to determine whether the property has sufficient value to secure the loan, and is for the benefit of the lender only. *Id.* Plaintiffs do not allege a confidential relationship between themselves and Industrial, and concede that in the absence of some contractual provisions or lender assurances justifying reliance, banks generally are not responsible for inspecting mortgaged property for the borrowers. Existing precedent in North Carolina supports plaintiffs' concession.

In *Carlson v. Branch Banking and Trust Co.*, 123 N.C. App. 306, 473 S.E.2d 631 (1996), *disc. review denied,* 345 N.C. 340, 483 S.E.2d 162 (1997), guarantor plaintiffs sued defendant lender for failure to monitor loan proceeds to see that the borrower used loan proceeds for the agreed upon purpose of acquisition of a mutual fund company. This Court noted that while a construction loan may more easily permit monitoring through on-site inspections, "the existence of an implied duty on the part of a lender to a guarantor to monitor the borrower's use of loan proceeds is far from universally recognized." *Id.* at 314, 473 S.E.2d at 636. The Court concluded that any duty on the part of a commercial lender to a guarantor to monitor the use of loan funds must arise through the contract itself. *Id.* at 315, 473 S.E.2d at 637.

In a case concerning a construction contract, *Perry v. Carolina Builders Corp.*, 128 N.C. App. 143, 493 S.E.2d 814 (1997), plaintiffs sold three real estate lots to Everlast Builders, Inc. ("Everlast"). The sales were financed as follows: defendant Carolina Builders Corporation ("CBC") obtained a first lien through a construction loan deed of trust and plaintiffs were accorded a second deed of trust on the property securing a purchase money promissory note from Everlast. The loan documents expressly stated that funds advanced were "for the purpose of constructing dwellings on the properties in question." *Id.* at 145, 493 S.E.2d at 815. A substantial amount of the funds advanced were not used for construction, and plaintiffs filed a breach of fiduciary duty against CBC on the basis that it "fail[ed] to take reasonable steps to ascertain that the proceeds it advanced . . . were actually being used for the purpose of constructing improvements on the property." *Id.* at 149, 493 S.E.2d at 817. This Court held that absent the allegation of an express contractual provision requiring the lender to ensure application of the loan funds to an agreed purpose, plaintiffs were owed no such legal duty. *Id.* at 150, 493 S.E.2d at 818.

While *Carlson* and *Perry* involved claims by third-parties, the holding in these two cases nevertheless dictates that a lender is only obligated to perform those duties expressly provided for in the loan agreement to which it is a party. A review of the loan agreement ("Agreement") at issue in this case indicates that "Section I" concerns those acts and things which Camp, as "owner," and Leonard, as "contractor" agree "to do and perform." "Section II" contains the provision at issue, and is prefaced with the phrase "[i]t is further understood . . . ." Sub-section one (1) of Section II states:

[Industrial] is authorized to disburse funds under its control in said construction loan account, together with the net proceeds of the loan, only in proportion to its inspector's report of progress, or by Architect's or Superintendent's Certificate accompanied by a proper affidavit from the contractor.

The other sub-sections in Section II state, in part, that the proceeds of the loan are to be used for payment of construction of "said building;" that Industrial may, without consent of Camp or Leonard, pay bills or complete construction; that expenses for appraisals, title insurance, etc., will be paid by owner and contractor; and, that Industrial may refuse to proceed with the loan if the owner and contractor have failed to comply with certain provisions of the agreement. Finally, sub-section six (6) provides:

The owner has accepted, and hereby accepts the sole responsibility for the selection of his own contractor and contractors, all materials, supplies, and equipment to be used in the construction, and [Industrial] assumes no responsibility for the completion of said building, or buildings, according to the plans and specifications and for the contract price. In the event that the funds on hand are found to be insufficient to erect the building and complete the same in accordance with the plans and specifications and any agreed extras, the owner shall place and hereby agrees to place such additional funds in his construction loan account as may be necessary to complete the building or buildings, according to such plans and specifications . . . .

The closing provision of the loan agreement states that "the above promises and agreements are made for the purpose of inducing the Industrial Federal Savings Bank . . . to make a loan upon the [following described property]."

An agreement should be interpreted as a whole, and not from particular words, phrases, or clauses, and the meaning gathered from the entire contract." *Starling v. Still*, 126 N.C. App. 278, 281, 485 S.E.2d 74, 76 (1997). While sub-section one (1) of Section II indicates that defendant Industrial may only disburse funds in proportion to a report of construction progress, it does not *require* Industrial to monitor construction progress for plaintiff's benefit. To the contrary, the agreement specifically provides that Industrial has no responsibility for the completion of the building according to plans and at the contract price. Taken as a whole, it is apparent that the provision plaintiffs recite was included in order to protect Industrial from being

required to make disbursements which would compromise its security interest in the subject property. As stated by Industrial employee Rains in his affidavit: "[T]he services Affiant performs in making periodic inspections in the case of construction loans are done for the benefit of Industrial to the end that the value of collateral held by Industrial will at all times equal or be greater than the balance then owing Industrial." Pursuant to the Agreement, Industrial is not expressly required to "do and perform" any specific duties besides advance loan funds for the purpose of construction of plaintiffs' home. Purpose statements are permissive and merely describe what the borrower may do with the money rather than giving rise to a lender's affirmative duty. *Carlson*, 123 N.C. App. at 314, 473 S.E.2d at 636. While ambiguities in written instruments are to be strictly construed against the drafting party, *Jones v. Palace Realty Co.*, 226 N.C. 303, 37 S.E.2d 906 (1946), there is no ambiguity in the present contract as to any duties required of Industrial and to whose benefit the provision in question is intended. Based on the foregoing, we hold that the Agreement did not expressly provide, and therefore Industrial did not have, the affirmative duty to inspect construction progress of plaintiffs' home for *plaintiffs' benefit.*

Plaintiffs also contend that Industrial took on additional duties by oral modification of the construction loan agreement. "The provisions of a written contract may be modified or waived by a subsequent parol agreement, or by conduct which naturally and justly leads the other party to believe the provisions of the contract are modified or waived, . . . [t]his principle has been sustained even where the instrument provides for any modification of the contract to be in writing." *Childress v. Trading Post*, 247 N.C. 150, 154, 100 S.E.2d 391, 394 (1957) (citations omitted). While Industrial may have assured plaintiffs that the defendant Mr. Leonard could be trusted with the advances from the account, such assurances do not indicate that Industrial took on the duty of monitoring construction for the plaintiffs' benefit or any other fiduciary duty. Mr. Camp authorized each advance from the construction loan account despite his authority to restrict them. In his deposition, Mr. Camp testified that he had been involved in construction of at least three other houses, and had been present on the subject property "practically" every day during construction. Mr. Camp's actions do not indicate that he relied upon Industrial to monitor construction progress for his benefit. Plaintiffs have shown no evidence of any oral modifications by Industrial wherein it took on such duties.

Plaintiffs present no additional assignments of error. Therefore, because plaintiffs conceded all their claims are dependent on a finding that Industrial owed plaintiffs the duty to inspect construction for plaintiffs' benefit, we find no error. Summary judgment in favor of Industrial is affirmed.

Affirmed.

Judges GREENE and JOHN concur.