ROSE v. LAKE NORMAN PEDIATRICS, P.A.

[162 N.C. App. 36 (2004)]

DANIELLE M. ROSE, M.D., Plaintiff v. LAKE NORMAN PEDIATRICS, P.A.,
Defendant and Third-Party Plaintiff

No. COA02-1725

(Filed 6 January 2004)

## 1. Insurance— COBRA—wrongful termination of health insurance coverage—directed verdict

The trial court abused its discretion by granting directed verdict in favor of defendant pediatric practice on plaintiff's claims for wrongful termination of health insurance coverage under the Consolidated Omnibus Reconciliation Act of 1985 (COBRA), and the case is remanded to the trial court for a jury determination on this claim, because: (1) plaintiff's employment was terminated as a result of an alleged material breach of her agreement with defendant, and the termination could be deemed a qualifying event that entitled her to continued health insurance coverage pursuant to COBRA, 29 U.S.C. § 1163(2); (2) plaintiff was never given the opportunity to continue coverage, and defendant put forth no evidence that as the plan sponsor it notified the plan administrator that plaintiff was entitled to continuation coverage; (3) defendant's answer to plaintiff's complaint never affirmatively denied defendant was not governed by COBRA, but only that plaintiff's alleged material breach did not obligate it to provide her notice pursuant to COBRA; and (4) plaintiff presented an exhibit that listed twenty-four employees employed by defendant during the applicable period, and COBRA only requires that there be at least twenty employees employed by the employer instead of the requirement that twenty employees participate in the employer's health insurance plan.

## 2. Insurance— COBRA—directed verdict

The trial court did not abuse its discretion by denying plaintiff pediatrician's motion for directed verdict on a Consolidated Omnibus Reconciliation Act of 1985 (COBRA) claim, because: (1) the evidence was insufficient to support whether defendant pediatric practice was required to comply with COBRA notice requirements due to the size of defendant's workforce; and (2) assuming defendant did not have at least twenty employees in its employ during the preceding calendar year, there was insufficient evidence as to whether plaintiff's termination was a qualifying event requiring compliance with those requirements or as to whether

defendant notified the plan administrator of plaintiff's entitlement to continuation coverage.

### 3. Employer and Employee— breach of contract—pediatric practice—directed verdict

The trial court abused its discretion by granting directed verdict in favor of defendant pediatric practice on plaintiff's claim for breach of an employment contract, and the case is remanded to the trial court for a jury determination on this claim, because: (1) when viewed in the light most favorable to plaintiff, the evidence established that plaintiff had simply made plans to open her own practice and was not a competitor or rival of defendant's at the time of her termination; and (2) there was sufficient evidence offered that plaintiff fulfilled her obligations to defendant under the parties' agreement.

Appeal by plaintiff from an order entered 26 July 2002 by Judge Susan C. Taylor in Iredell County Superior Court. Heard in the Court of Appeals 9 October 2003.

*Maupin, Taylor & Ellis, P.A., by Gretchen W. Ewalt and Terence D. Friedman; Massey & Cannon, P.L.L.C., by E. Bedford Cannon, for plaintiff-appellant.*

*Homesley, Parker & Wingo, P.L.L.C., by Clifton W. Homesley and Nancy Goodman, for defendant-appellee.*

HUNTER, Judge.

Danielle M. Rose, M.D. ("plaintiff") appeals the trial court's grant of directed verdict in favor of Lake Norman Pediatrics, P.A. ("defendant") on her claims for wrongful termination of health insurance coverage under the Consolidated Omnibus Reconciliation Act of 1985 ("COBRA") and breach of contract. Plaintiff also appeals the denial of her motion for directed verdict on the COBRA-related claim. For the reasons stated herein, we affirm the trial court's denial of plaintiff's motion, but reverse the grant of directed verdict in favor of defendant and remand the case to the trial court for a jury determination on both claims.

On 2 January 1997, plaintiff, a pediatrician, entered into an employment contract with defendant, a pediatric practice formerly known as Mooresville Pediatric Associates. The contract incorporated by reference a "Physician Employment Agreement" ("Agreement"), which stated, *inter alia*:

Employee's rights with respect to [health insurance] benefits shall be subject to (a) the provisions of the relevant contracts, policies or plans providing such benefits, and (b) the right of Employer to amend, modify or terminate any of such benefits if that occurs with respect to all classes of employees covered by a given benefit.

. . . .

Employee shall be eligible to acquire an ownership interest in Employer at the end of <u>one</u> year of employment. The terms and conditions of such acquisition shall be determined at the end of eligibility by mutual agreement of both parties. . . .

. . . .

Employee agrees to devote his/her professional efforts in a full-time practice exclusively to the interest of Employer and shall not engage in the practice of medicine other than for Employer. Full-time practice is defined as a minimum of forty (40) hours per week plus call coverage as specified herein. . . .

. . . .

The term of this Agreement shall be for one (1) year from the date Employee begins employment and shall be automatically renewed for successive one year terms unless terminated . . . upon the occurrence of any of the following events:

A. By notice in writing to the other party given ninety (90) days prior to the date of termination.

B. Material breach of contract by Employee or Employer at the option of the non-breaching party.

The Agreement did not contain a covenant not to compete clause. Plaintiff subsequently began her employment with defendant in April of 1997. Shortly thereafter, another pediatrician, Wendy Gaskins, M.D. ("Dr. Gaskins"), was hired by defendant after entering into a similar employment contract and agreement.

By the summer of 1999, both plaintiff and Dr. Gaskins ("the doctors") had twice been denied an ownership interest in the practice despite each having had two years of eligible employment with defendant. As an alternative, the doctors discussed starting a pediatric practice separate and apart from defendant. Over the next few months, the doctors engaged in several activities relevant to the

establishment of that practice. In October of 1999, plaintiff spoke with the administrator of Lake Norman Regional Medical Center and learned that the hospital would provide limited assistance towards the lease of office space for their pediatric practice. In January of 2000, plaintiff had a conversation with Blair Craven ("Craven"), an employee of defendant's and the mother of small children who were patients of defendant's, about whether Craven would consider taking her children to plaintiff's pediatric practice if such a practice existed. On 1 February 2000, the doctors applied with the North Carolina State Medical Board to form a limited liability company known as "Growing Up Pediatrics." In late February of 2000, the doctors engaged in discussions to secure financing for their new practice. In February and March of 2000, the doctors retained the services of Opus Healthcare Consultants ("Opus") to assist them with setting up their pediatric practice, which included finding property to lease for that practice. Also in March of 2000, the doctors hired a firm to design a logo for "Growing Up Pediatrics." Finally, in early April of 2000, plaintiff conferred with and received a proposal from an architect regarding renovating office space to meet the needs of the doctors in their new practice. None of the doctors' activities relevant to the establishment of their practice took place on defendant's premises or during the doctors' scheduled work hours; however, plaintiff did make three one-minute phone calls to Opus on 8 March, 30 March, and 6 April 2002 while at work on defendant's premises.

Upon learning of plaintiff's plans, Amy Ferguson, M.D. ("Dr. Ferguson"), the principal in defendant, met with plaintiff on 14 April 2000 to discuss the matter. Plaintiff informed Dr. Ferguson of her interest in opening a pediatric practice because it was unlikely that she would be made a partner. Thereafter, on 17 April 2000, plaintiff received a termination letter from Dr. Ferguson stating that the following actions of plaintiff's were "totally unacceptable" and considered to be a "material breach" of plaintiff's Agreement with defendant:

1. That for some time you have been discussing with certain of my staff members your plans for practice on your own with [Dr. Gaskins].

2. That you have spoken with my patients and informed them that the change in your practice would occur within approximately six months or thereabouts and you have made efforts to recruit my patients for your practice.

3. That you intend to open your office in the Cornelius area and compete directly with me.

Plaintiff's termination was effective immediately, and termination of her health insurance coverage under defendant's group health plan was effective 1 May 2000. Dr. Gaskins was not terminated, but she gave notice to end her employment with defendant soon thereafter.

Plaintiff filed a complaint on 1 December 2000 alleging that defendant had breached their Agreement by wrongfully terminating plaintiff without (1) continuing her health insurance benefits pursuant to COBRA, and (2) giving her ninety days notice prior to termination. Defendant answered and counterclaimed, but voluntarily dismissed its counterclaims on 2 April 2002.

The trial was held on 8 April 2002. After resting, both parties moved for directed verdict. In an order entered on 26 July 2002, the trial court entered directed verdict in favor of defendant after concluding, *inter alia*:

5. When the plaintiff was terminated she formed a class of persons whose employment was terminated and the defendant had a right to terminate the insurance coverage of the plaintiff.

6. The plaintiff failed to devote her professional efforts in full-time practice exclusively to the interest of her employer (the defendant) and therefore failed to fulfill an explicit term of her employment agreement.

7. The plaintiff acquired an adverse interest in her employer, the defendant, in that she became engaged in a business which necessarily rendered her a competitor of her employer, no matter how much or how little of her time and attention she devoted to it.

Plaintiff appeals.

Plaintiff's assignments of error raised on appeal all take issue with the court granting defendant's motion for directed verdict on both of her claims. "A motion for directed verdict tests the sufficiency of the evidence to take [a] case to the jury." *Abels v. Renfro Corp.*, 335 N.C. 209, 214, 436 S.E.2d 822, 825 (1993). In deciding a defendant's motion for directed verdict, "the [trial] court must consider all of the evidence in the light most favorable to the plaintiff, including evidence elicited from the defendant favorable to the plaintiff," *Environmental Landscape Design v. Shields*, 75 N.C. App. 304, 305,

330 S.E.2d 627, 628 (1985), and resolve "all inconsistences, contradictions and conflicts for [the plaintiff], giving [the plaintiff] the benefit of all reasonable inferences drawn from the evidence." *McFetters v. McFetters*, 98 N.C. App. 187, 191, 390 S.E.2d 348, 350 (1990). A trial court's decision to grant or deny a motion for directed verdict should not be disturbed absent an abuse of discretion. *Crist v. Crist*, 145 N.C. App. 418, 422, 550 S.E.2d 260, 264 (2001). In this case, the issues for this Court involve whether (1) plaintiff was entitled to COBRA benefits upon the termination of her employment, and (2) plaintiff's conduct and actions amounted to a breach of the employment contract.

I.

**[1]** Plaintiff's first assignment of error argues the trial court erred as a matter of law in directing a verdict in favor of defendant on plaintiff's claim for wrongful termination of health insurance benefits under COBRA.

At the onset, defendant argues "[a]ppellate review of an order granting a directed verdict is limited to the grounds asserted by the moving party at the trial level." *Jay Group, Ltd. v. Glasgow*, 139 N.C. App. 595, 598-99, 534 S.E.2d 233, 236 (2000). Specifically, defendant contends that plaintiff abandoned her COBRA-related claim because she never raised any federal law issues regarding COBRA (1) during the course of the trial, (2) as a ground for granting a motion for directed verdict in her favor, or (3) in opposition to defendant's motion for directed verdict. While we found no reference to the words "COBRA" or "federal claim" in the transcript, plaintiff's questions and responses regarding the lack of notice she allegedly received as to the continuation of her insurance coverage clearly imply her attempt to argue the federal claim that appeared in her complaint. Moreover, the order indicates that the trial court recognized plaintiff's federal claim by incorporating "plaintiff's complaint by reference . . . ." Therefore, we review the trial court's grant of directed verdict on this claim.

COBRA "*demands*" that, in the event of certain qualifying events, "employers who provide insurance for their employees give the employees an opportunity to continue their insurance coverage under the employer's insurance plan . . . ." *Zickafoose v. UB Servcies, Inc.*, 23 F. Supp. 2d 652, 655 (S.D. W. Va. 1998) (emphasis added). The " 'ultimate duty to assure that an employee receives COBRA benefits resides exclusively' " with the employer. *Hamilton v. Mecca, Inc.*, 930

F. Supp. 1540, 1553 (S.D. Ga. 1996) (citation omitted). Thus, if the employer must comply with COBRA, the burden is on that employer to demonstrate it has implemented procedures reasonably calculated to effectuate actual notice of COBRA continuation rights. *Brown v. Neely Truck Line, Inc.*, 884 F. Supp. 1534 (M.D. Ala. 1995). One such procedure requires the employer (or plan sponsor) to notify the plan administrator of its group health plan about the occurrence of certain qualifying events within thirty days. 29 U.S.C. § 1166(a)(2) (1999). Failure to do so will result in the employer being held solely liable for a COBRA violation. *Ward v. Bethenergy Mines, Inc.*, 851 F. Supp. 235, 237-38 (S.D. W. Va. 1994).

When considered in the light most favorable to plaintiff, the evidence offered was sufficient to support a denial of defendant's motion for directed verdict on plaintiff's COBRA-related claim. Here, plaintiff's employment was terminated as a result of an alleged material breach of her Agreement with defendant. Based on the facts in this case, plaintiff's termination could be deemed a qualifying event that entitled her to continued health insurance coverage pursuant to COBRA. 29 U.S.C. § 1163(2) (1999) (providing that "[t]he termination (other than by reason of such employee's gross misconduct) . . . of the covered employee[]" is a qualifying event). Yet despite that qualifying event, additional evidence, undisputed by defendant, established that plaintiff was never given the opportunity to continue coverage. Plaintiff simply received notice of the cancellation of her insurance coverage from defendant, and subsequently received a letter from the plan administrator, John Alden Life Insurance Company, that her coverage had ended. Defendant put forth no evidence that, as the plan sponsor, it notified the plan administrator that plaintiff was entitled to continuation coverage.

Nevertheless, defendant also argues that there was insufficient evidence offered that it employed the requisite number of employees to necessitate compliance with COBRA's notice requirements. 29 U.S.C. § 1161(b) (1999) provides that an employer must provide an employee, who loses coverage under the employer's group health plan as a result of a qualifying event, the option to continue coverage under the plan *unless* the employer "maintaining such plan normally employed fewer than 20 employees on a typical business day during the preceding calender year." However, defendant's answer to plaintiff's complaint never affirmatively denied defendant was not governed by COBRA, only that plaintiff's alleged material breach did not obligate it to provide her notice pursuant to COBRA.

"Averments in a pleading to which a responsive pleading is required . . . are admitted when not denied in the responsive pleading." N.C.R. Civ. P. 8(d). Moreover, plaintiff presented an exhibit that listed twenty-four employees employed by defendant during the applicable time period. Defendant, in turn, points this Court's attention to another of plaintiff's exhibits, listing only seventeen employees on a billing statement for defendant's group health plan for April of 2000. Yet, COBRA only requires that there be at least twenty employees employed by the employer, not that twenty employees participate in the employer's health insurance plan. *See* 29 U.S.C. § 1161(b) (1999).

Accordingly, the trial court's conclusion that defendant had a right to terminate plaintiff's insurance coverage because she "formed a class of persons whose employment was terminated," did not automatically excuse defendant from providing plaintiff with notice of her ability to continue such coverage under COBRA. Defendant would be excused if (1) defendant employed fewer than twenty employees during the preceding calendar year (making COBRA inapplicable), or (2) plaintiff's termination was not a qualifying event due to her gross misconduct. Since sufficient evidence was offered, when considered in the light most favorable to plaintiff, that defendant was governed by COBRA and that plaintiff's termination was a qualifying event, the trial court abused its discretion in granting defendant's motion for directed verdict. Therefore, plaintiff's COBRA-related claim should have been allowed to go to the jury.

## II.

[2] Plaintiff's second assignment of error argues the trial court erred as a matter of law in failing to direct a verdict in plaintiff's favor on her COBRA-related claim. In deciding a *plaintiff's* motion for directed verdict, the trial court considers the evidence in the light most favorable to the *defendant*, giving it the benefit of all reasonable inferences drawn from the evidence. *See Environmental Landscape Design*, 75 N.C. at 305, 330 S.E.2d at 628. We conclude that, when considered in the light most favorable to defendant, the evidence was insufficient to support whether defendant was required to comply with COBRA notice requirements due to the size of defendant's workforce. Further, assuming defendant did have at least twenty employees in its employ during the preceding calendar year, there was insufficient evidence as to whether (1) plaintiff's termination was a qualifying event requiring compliance with those requirements, or (2) defendant notified the plan administrator of plaintiff's entitlement to

continuation coverage. Thus, the trial court did not abuse its discretion in denying plaintiff's motion for directed verdict.

### III.

[3] Finally, plaintiff's third assignment of error argues the trial court erred in directing a verdict in favor of defendant on plaintiff's breach of contract claim. We agree.

Our Supreme Court has held that "[w]here an employee deliberately acquires an interest adverse to his employer, he is disloyal, and his discharge is justified." *In re Burris*, 263 N.C. 793, 795, 140 S.E.2d 408, 410 (1965) (where the Supreme Court upheld the City Manager's discharge of an employee of the City of Asheville after that employee acquired an interest in real property that he knew the City was attempting to purchase). *See also Long v. Vertical Technologies, Inc.*, 113 N.C. App. 598, 439 S.E.2d 797 (1994). The *Burris* Court reasoned that " 'when a servant becomes engaged in a business which necessarily renders him a competitor and rival of his master, no matter how much or how little time and attention he devotes to it, he has an interest against his duty.' " *Burris*, 263 N.C. at 795, 140 S.E.2d at 410 (citation omitted). Here, plaintiff, not bound by any covenant not to compete, testified to engaging in several activities relevant to opening her own pediatric practice. Plaintiff had tentatively scheduled to open her practice in September of 2001 to provide defendant with ninety days notice before ending her employment (as required by the Agreement). However, plaintiff's employment was abruptly terminated by defendant on 17 April 2000 without any evidence of plaintiff ever having been reprimanded or disciplined, or having caused defendant economic harm while in its employ. More importantly, plaintiff's termination took place prior to her having engaged in a business which necessarily rendered her a competitor of defendant because she had not obtained office space, financing, employees, patient supplies, or medical equipment for her new practice. On the contrary, plaintiff testified that she would have reconsidered opening her own practice if Dr. Ferguson had reconsidered giving her an ownership interest in the pediatric practice. Thus, when viewed in the light most favorable to plaintiff, the evidence establishes that plaintiff had simply made plans to open her own practice and was not a "competitor and rival" of defendant's at the time of her termination.

Nevertheless, defendant argues the *Burris* holding is but one factor for the trial court to consider when determining whether an

**ROSE v. LAKE NORMAN PEDIATRICS, P.A.**

[162 N.C. App. 36 (2004)]

employer was justified in terminating an employee. *See Dalton v. Camp*, 353 N.C. 647, 548 S.E.2d 704 (2001). Specifically, defendant contends that while the trial court found that plaintiff had acquired an interest adverse to defendant, the court also found that defendant had breached an explicit term of the Agreement due to her failure to "devote [her] professional efforts in a full-time practice exclusively to the interest of Employer . . . ." Yet, there was no evidence offered at trial that during plaintiff's employment with defendant, she failed to work "full-time" exclusively for defendant during the required "forty (40) hours per week plus call coverage" as that term was defined in the Agreement. Our interpretation of this subsection of the Agreement gives effect to the words "full-time" and "exclusively" while, at the same time, construing any possible ambiguity against defendant, the drafter of the Agreement. *See Bolton Corp. v. T.A. Loving Co.*, 317 N.C. 623, 628, 347 S.E.2d 369, 372 (1986); *Camp v. Leonard*, 133 N.C. App. 554, 562, 515 S.E.2d 909, 914 (1999). Accordingly, the trial court abused its discretion in granting a motion for directed verdict in favor of defendant because there was sufficient evidence offered that plaintiff fulfilled her obligations to defendant under the parties' Agreement.

In conclusion, we affirm the trial court's denial of plaintiff's motion for directed verdict. We reverse the trial court's grant of directed verdict in favor of defendant on plaintiff's claims for wrongful termination of health insurance coverage under COBRA and breach of contract because there was sufficient evidence to take those claims to the jury. The case is therefore remanded to the trial court for a jury determination on plaintiff's claims.

Affirmed in part; reversed and remanded in part.

Judges McGEE and CALABRIA concur.