RAYMOND L. McGUIRE and wife, ROBERTA M. McGUIRE, Plaintiffs v. DAVID R. DIXON, and wife, JEAN-LOUISE DIXON, Defendants

No. COA09-1536

(Filed 5 October 2010)

**1. Appeal and Error— interlocutory order—substantial right—possibility of inconsistent verdicts**

Although defendants' appeal from the denial of their counterclaims for unfair and deceptive trade practices and fraud was from an interlocutory order, the right to avoid the possibility of two trials on the same issues with the possibility of inconsistent verdicts based on overlapping factual issues affected a substantial right, thus allowing for immediate review.

**2. Statutes of Limitation and Repose— sealed instrument— extended limitations period**

A *de novo* review revealed that the trial court erred by concluding that defendants' counterclaims for fraud and unfair and deceptive trade practices were barred by N.C.G.S. §§ 1-52(9) and 75-16.2. The ten-year statute of limitation under N.C.G.S. § 1-47(2) should have been applied to the counterclaims given that the promissory notes and modification agreement were signed under seal and conveyed an interest in real property.

Appeal by defendants from order entered 4 September 2009 by the Honorable Alma L. Hinton in Dare County Superior Court. Heard in the Court of Appeals 28 April 2010.

*White & Allen, P.A., by John P. Marshall, for plaintiff appellees.*

*Dixon & Dixon Law Offices, P.L.L.C., by David R. Dixon, for defendant appellants.*

HUNTER, JR., Robert N., Judge.

## I. BACKGROUND

On 15 July 2004, David and Jean-Louise Dixon (collectively "defendants") purchased a rental home property from Raymond and Roberta McGuire (collectively "plaintiffs") known as Top Notch Villa, located in Iron Shore, Montego Bay, Jamaica. The purchase price for the property was $440,000. Defendants made a $75,000 cash down payment, and gave two promissory notes to plaintiffs for the remaining aggregated balance of $365,000. Deeds of trust were executed on property located in Dare County, North Carolina, to secure payment of the notes.

On 15 November 2004, plaintiffs and defendants executed an "Agreement to Modify Notes," which called for a series of payments to be made in 2004 and 2005 to pay the balance and accrued interest owed on the promissory notes. Defendants made some, but not all, of the payments called for under the modification agreement. As of 1 July 2008, defendants owed plaintiffs $168,800, with interest accruing at eight percent per annum.

After defendants defaulted and plaintiff made a demand for payment, plaintiffs filed a complaint on the promissory notes and modification agreement on 5 March 2009 seeking $168,800 plus interest. Defendants filed an answer raising the defenses of mutual mistake

McGUIRE v. DIXON

[207 N.C. App. 330 (2010)]

and no consideration.[1] Defendants also counterclaimed for fraud and unfair and deceptive trade practices. The basis of defendants' counterclaims was the alleged misrepresentation of the profits produced by the villa by plaintiffs. Plaintiffs filed a motion to dismiss the counterclaims pursuant to N.C.R. Civ. P. 12(b)(6), and argued that the statute of limitations for fraud in N.C. Gen. Stat. § 1-52(9) (2009) (three years) and unfair and deceptive trade practices in N.C. Gen. Stat. § 75-16.2 (2009) (four years) had expired. After a hearing on the motion in Dare County Superior Court, the Honorable Alma L. Hinton issued an order on 4 September 2009 finding defendants' counterclaims were barred by the applicable statute of limitations. The trial court's order contained no certification for immediate appeal pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure.

Defendants filed notice of appeal to this Court on 30 September 2009. Plaintiffs thereafter moved to dismiss the appeal, claiming that because their claims had not been adjudicated, the matter before this Court is interlocutory and not immediately appealable, given that no substantial right of defendants has been affected. Defendants filed a response in opposition to the motion to dismiss, stating that although interlocutory in nature, this appeal is subject to immediate review because a substantial right has been affected. The motion to dismiss and defendants' response were referred to this panel for a determination on the issues of: (1) whether jurisdiction is proper in this Court even though this appeal is interlocutory; and (2) if jurisdiction is proper, whether the trial court erred in finding that defendants' counterclaims are barred by the applicable statute of limitations.

## II. ANALYSIS

### A. Jurisdiction

[1] We note that this appeal is interlocutory given that, while defendants' counterclaims for unfair and deceptive trade practices and fraud have been dismissed by the trial court and are now on appeal, plaintiffs' cause of action against defendants remains pending in the trial court. *Embler v. Embler*, 143 N.C. App. 162, 164, 545 S.E.2d 259, 261 (2001) (orders made during the pendency of an action not disposing of entire controversy at trial are interlocutory). "Generally, there is no

---

1. In their brief, plaintiffs attempt to characterize defendants' defense of mutual mistake as a counterclaim. However, in plaintiffs' motion to dismiss under Rule 12(b)(6), plaintiffs mention only the counterclaims of fraud and unfair and deceptive trade practices. Since the record shows that mutual mistake is a defense rather than a counterclaim, we treat it as such in this opinion.

right of immediate appeal from interlocutory orders and judgments." *Goldston v. American Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990).

> An interlocutory order may be immediately appealed in only two circumstances: (1) when the trial court, pursuant to N.C.R. Civ. P. 54(b), enters a final judgment as to one or more but fewer than all of the claims or parties and certifies that there is no just reason to delay the appeal; or (2) when the order deprives the appellant of a substantial right that would be lost absent appellate review prior to a final determination on the merits.

*High Rock Lake Partners v. N.C. DOT*, 204 N.C. App. 55, 61, 693 S.E.2d 361, 366 (2010).

Our Supreme Court has stated that "the right to avoid the possibility of two trials on the same issues can be such a substantial right." *Green v. Duke Power Co.*, 305 N.C. 603, 606, 290 S.E.2d 593, 595 (1982) (quotation marks and citation omitted). If overlapping issues are present between those argued on appeal and those remaining at trial, "[t]his Court has created a two-part test to show that a substantial right is affected, requiring a party to show '(1) the same factual issues would be present in both trials and (2) the possibility of inconsistent verdicts on those issues exist[s].'" *Camp v. Leonard*, 133 N.C. App. 554, 558, 515 S.E.2d 909, 912 (1999) (citation omitted).

In this case, the possibility of inconsistent verdicts is present, because there are overlapping factual issues between defendants' counterclaims here on appeal and the defenses remaining at the trial court. In their answer, defendants allege the following in support of their defenses and counterclaims:

Additional Facts in Answer to the Allegations

10. The Plaintiff Raymond McGuire traveled to the Outer Banks of North Carolina during the negotiations regarding the sale of the real property and the rental business.

11. During the negotiations in North Carolina, it was decided among the parties that the real property had a value of $250,000.00.

12. During the negotiations in North Carolina, it was decided that the business of the Villa, which included the personal property associated with the Villa was worth $190,000.00. The personal property included an automobile worth approximately

$10,000.00, furnishings worth approximately $5,000.00 and the remaining bulk of the value assigned to the Villa was for the employee contracts and future earnings to be made from the rental of the property.

13. The Plaintiffs had a real estate agent named Ms. Parchment who acted on their behalf, spoke on their behalf, and presented various documents on their behalf, wherein it was stated in no uncertain terms that the profit after expenses of the Villa would be in excess of US $40,000.00 per year.

14. Based upon the representation of the real estate agent, all the parties believed that the valuation of $190,000.00 was a reasonable valuation for the business. The payments on the note or the business were designed to be approximately half of the income from the Villa, allowing the ongoing income of the Villa to pay for itself.

15. In actuality, the Villa does not create a profit of US $40,000.00 per year, but rather requires the contribution of approximately $1,000.00 to $2,000.00 a month to maintain the expenses over and above the income of the Villa.

### Mutual Mistake

16. The allegations presented above are incorporated herein by reference as if set forth word by word.

17. The Defendants exercised due diligence in determining the matter of income from the business of the Villa in that they: (1) discussed the matter of the income from the business of the Villa with the Plaintiff Raymond McGuire (2) traveled to Jamaica for the purpose of reviewing the rental program (3) obtained in writing an estimate of the costs and income for the rental of the Villa and (4) discussed in depth the matter of employees and other costs with the Plaintiff Raymond McGuire in their meeting in North Carolina.

18. The reliance by the Defendants on the Plaintiffs['] representations and the representations of their agent was reasonable.

19. The Defendants are entitled to rescission of the contract and the return of the funds paid for the business of the Villa.

No Consideration

20. The allegations presented above are incorporated herein by reference as if set forth word by word.

21. There was no value obtained by the Defendants for the business of the Villa, in that it creates a loss not a profit, and therefore there was no consideration for the purchase of the business of the Villa, the monies paid or the promissory note.

22. The Defendants are entitled to rescission of the contract and the return of the funds paid for the business of the Villa.

The underlying factual issue presented in these defenses is whether plaintiffs made inaccurate representations regarding the Villa. These same transactions and occurrences are the factual predicate underlying defendants' counterclaims for unfair and deceptive trade practices and fraud. Were we to decline review of these two claims now brought on appeal, and thereafter the finder of fact found merit in defendants' defenses, there could be a conflict between that finding and any potential new trial on the claims of fraud and unfair and deceptive trade practices if this Court were to reverse and remand on these claims in a subsequent appeal. Thus, we conclude that defendants have demonstrated a possibility of conflicting verdicts, the avoidance of which is a substantial right,[2] and we deny plaintiffs' motion to dismiss. *See Bowman v. Alan Vester Ford Lincoln Mercury*, 151 N.C. App. 603, 566 S.E.2d 818 (2002) (substantial right held affected when summary judgment granted to third-party defendant where third-party defendant's representations presented common factual issues in plaintiff's claim against defendant and defendant's claim against third-party defendant). We therefore proceed to the merits of defendants' appeal.

## B. Standard of Review

We review orders dismissing counterclaims under Rule 12(b)(6) *de novo. See Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4, *aff'd per curiam*, 357 N.C. 567, 597 S.E.2d 673-74

---

2. Ordinarily, the statement of grounds for appellate review is required to be contained in an appellant's brief, and there is no portion of the appellate rules that allows an appellant to refer this Court elsewhere for the grounds supporting our review. N.C.R. App. P. 28(b)(4) (2010). Here, defendants have not given a sufficient statement of grounds for appellate review in their brief; however, given that the motion to dismiss this appeal was referred to this panel, we grant review on the grounds better delineated in defendants' response to plaintiffs' motion to dismiss.

(2003). "Upon review of a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, the question for the Court is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief could be granted under some legal theory." *Brittain v. Cinnoca*, 111 N.C. App. 656, 659, 433 S.E.2d 244, 245 (1993).

### C. Statute of Limitations

[2] In its order, the trial court concluded that defendants' counterclaims for fraud and unfair and deceptive trade practices were barred by N.C.G.S. § 1-52(9) and N.C.G.S. § 75-16.2, respectively. Defendants argue that the trial court erred, because the ten-year statute of limitations in N.C. Gen. Stat. § 1-47(2) (2009) should have been applied to their counterclaims given that the promissory notes and modification agreement were signed under seal. We agree.

Section 1-47(2) of our General Statutes provides that, within ten years, an action may be instituted

> [u]pon a sealed instrument or an instrument of conveyance of an interest in real property, against the principal thereto. Provided, however, that if action on an instrument is filed, the defendant or defendants in such action may file a counterclaim arising out of the same transaction or transactions as are the subject of plaintiff's claim, although a shorter statute of limitations would otherwise apply to defendant's counterclaim. Such counterclaim may be filed against such parties as provided in G.S. 1A-1, Rules of Civil Procedure.

N.C.G.S. § 1-47(2). In interpreting this statute, this Court has held that the extended limitations period in section 1-47(2) applies to claims on a sealed instrument, even though a shorter limitations period could otherwise apply. *Bank v. Holshouser*, 38 N.C. App. 165, 170, 247 S.E.2d 645, 648 (1978) (section 1-47(2) held to prescribe limitations period for action brought to enforce purchase money security agreement under Article 9 of the Uniform Commercial Code where agreement under seal).

Plaintiffs argue that section 1-47(2) does not apply to defendants' counterclaims because: (1) the statute applies only to "consumer transactions such as automobile loans, appliances, and other purchase money retail credit" and truth in lending actions, and (2) the statute has never been applied to situations such as the one presented in the case *sub judice*.

McGUIRE v. DIXON

[207 N.C. App. 330 (2010)]

"Statutory interpretation properly begins with an examination of the plain words of a statute." *State v. Dellinger*, 343 N.C. 93, 95, 468 S.E.2d 218, 220 (1996). "When a statute is clear and unambiguous, the Court will give effect to the plain meaning of the words without resorting to judicial construction." *State v. Byrd*, 363 N.C. 214, 220, 675 S.E.2d 323, 325 (2009). "If the statutory language is clear and unambiguous, the court eschews statutory construction in favor of giving the words their plain and definite meaning. When, however, a statute is ambiguous, judicial construction must be used to ascertain the legislative will." *State v. Beck*, 359 N.C. 611, 614, 614 S.E.2d 274, 277 (2005) (quotation marks and citations omitted). "When multiple statutes address a single subject, this Court construes them in pari materia to determine and effectuate the legislative intent." *Brown v. Flowe*, 349 N.C. 520, 523-24, 507 S.E.2d 894, 896 (1998).

Bearing these principles of interpretation in mind, we do not read section 1-47(2) to be so narrowly tailored as plaintiffs contend. In the article cited by plaintiffs to support their restricted interpretation, Professor Navin's commentary provides, to the contrary of plaintiffs' position, a broad reading of section 1-47(2).

A consumer sued by a financing agency sometimes faces problems of limitations and of third-party practice. In North Carolina, the limitation period on a sealed instrument is ten years, and nearly all negotiable promissory notes bear that magic word, "seal." The ordinary contract action bears a limitation period of three years, and a cause of action sounding in fraud is limited to three years after the discovery of the facts constituting the fraud. Prior to 1969, a buyer who signed a negotiable promissory note as part of a consumer credit transaction could have found himself being sued by the holder when the statute of limitations on any claim he had against the seller had long since run. The buyer also faced questions of third-party practice when he attempted to implead the seller into the holder's suit against him. An enactment by the 1969 General Assembly attempted to deal with these problems. This legislation amended the statute-of-limitations section concerning sealed instruments to provide that the maker of a sealed instrument can assert any claim arising out of the transaction against either the plaintiff or against a third party even though a shorter statute of limitations would otherwise bar such a claim. The same Act also permits the court, upon motion by the defendant-maker, to include in the holder's action such parties as the assignor or transferor of the plaintiff. The Act then

states that the purpose underlying it is "to insure that if a suit may be maintained on a contract against one contracting party, the other contracting party will not be allowed to escape his contractual obligations by the passage of time or the transfer of contract rights."

Navin, *Waiver of Defense Clauses in Consumer Contracts*, 48 N.C. L. Rev. 505, 548-49 (1970) (footnotes omitted).

No part of this commentary nor any part of section 1-47(2) claim that the ten-year limitations period for counterclaims is limited merely to consumer transactions. Indeed, such reading would conflict directly with the plain language of section 1-47(2), which provides that the ten-year limitation period applies to "a sealed instrument or an instrument of conveyance of an interest in real property." N.C.G.S. § 1-47(2). The latter part of the section, as Professor Navin correctly notes, extends the limitations period for counterclaims otherwise barred in order to allow the maker of either a "sealed instrument" or "instrument of conveyance of real property" to defend on an equal footing with the party seeking to collect on the underlying debt.

Here, there is no dispute that the promissory notes and the modification agreement were signed under seal and conveyed an interest in real property. Thus, under a plain reading of section 1-47(2), the ten-year statute of limitations applied to plaintiffs' cause of action for collection on the negotiable instruments as well as any counterclaims that defendants may have against plaintiffs regarding the execution of the promissory notes and modification agreement. The trial court erred in applying the three-year limitations period for fraud in section 1-52(9) and the four-year statute of limitations for unfair and deceptive trade practices in section 75-16.2. Accordingly, we reverse and remand this case to the trial court for a determination of defendants' counterclaims on the merits.

Reversed and remanded.

Judges McGEE and STROUD concur.